**In the Matter of M.A.S., a Juvenile.**

**No. 04–82–00328–CV.**

Court of Appeals of Texas,
San Antonio.

April 11, 1984.

On Appellant's Motion for Rehearing
July 11, 1984.

On State's Motion for Rehearing En Banc
Sept. 12, 1984.

---

**1.** The Appellant is referred to in the record as Edward Lee LeBlanc and Edward Lee LeBlanc, Jr.

Donald Fidler, Jr., San Antonio, for appellant.

Richard Fox, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

### OPINION

CADENA, Chief Justice.

This is an appeal from a disposition order committing appellant, a juvenile, to the Texas Youth Council.

We affirm.

At the adjudication hearing in San Antonio on September 11, 1979, appellant pleaded "true" before Judge Carol Haberman to allegations that he had committed the offense of burglary. Appellant raises no questions concerning the disposition hearing or the action of the trial court in finding that he had engaged in delinquent conduct. His complaint on appeal is that he was deprived of due process because of the delay in holding the disposition hearing.

After the trial court held that appellant had engaged in delinquent conduct, the State requested that the disposition hearing be delayed indefinitely, adding that the State felt that disposition should be delayed so that appellant could be given "another chance." The prosecutor told the court that appellant understood that if he "could work out with his aunt and go to school, whatever, we'll consider probation for his disposition in the future."

The trial court, after determining that appellant was living with his aunt and going to school regularly, asked appellant if he knew what would happen if he didn't go to school. Appellant replied, "Texas Youth Council." The court, after telling appellant that he would have to comply with other conditions, "such as being in at 7:00 at night and a lot of other things," withheld disposition.

At the insistence of the Bexar County Probation Office, a disposition hearing was held on February 4, 1980. Appellant, his aunt and his mother were present at this hearing. The court heard evidence that appellant had been absent from school and had left his aunt's house to resume living with his mother. Appellant said he preferred to live with his mother. Apparently, at the time of this hearing, appellant was once again living with his aunt, who had placed him in a different school.

The court told appellant that under no circumstances would he be allowed to return to his mother's home. After the aunt told the court that she had placed appellant in another school and was able to insure that he would attend school, she testified that she would soon be moving to Laredo to join her husband who had obtained employment there. Her husband, appellant's uncle, told the court that they would be happy to have appellant live with them in Laredo, and that he believed their move to Laredo would be complete by the latter part of February and "definitely ... by the first of March."

The court, without making a disposition, ordered the parties to appear again on February 25, because she wanted "to see what develops while he is in school where he is." The court added that on February 25 she wanted to know if appellant had been going to school every day, "whether or not there has been any concern at all about coming in late at night, about certainly if there is any charge against him, even if its marijuana, for certainly if there would be a burglary or something in the past." The court also asked for information about the ability of the mother to handle the child and, if the mother was unable to handle him, "whether sending him to Laredo at that time would be an answer or T.Y. C. ...." The trial court ordered that appellant remain with his aunt, and the aunt and uncle assured the court that they would

take care of appellant and send him to school. The hearing closed with the court's statement: "And especially if you don't appear at this court when you're asked to appear. That means you would probably be picked up and then go." Apparently, these remarks were addressed to appellant, although they formed a part of a statement initially directed to the probation officer. Appellant made no response, nor did the aunt or uncle.

Neither appellant nor any of his relatives were present at the February 25 hearing. The probation officer testified that appellant had been absent from school since February 14. The probation officer added that he had been told by the school attendance officer that appellant and his aunt had moved to Laredo to join appellant's uncle. The court had not given permission for such move. Appellant's attorney told the court that he had been unable to get in touch with either appellant or his aunt in San Antonio.

The trial court then announced that because of appellant's nonappearance and "because of the prior admonitions of this Court ... the Court will issue a capias for" appellant "and also a commitment order to Texas Youth Council." The probation officer said, "Duval [sic] County will be notified in Laredo." Nothing else was said or done on February 25. No commitment order was signed, and the record does not indicate whether the capias was issued. More than two years later, appellant was taken into custody in San Antonio. The record does not indicate whether he was in San Antonio on a visit or had moved back to San Antonio. At a hearing subsequently held before Judge David Peeples, appellant's attorney introduced in evidence transcripts of the evidence heard at the previous three hearings. Also received in evidence was an instrument, dated September 11, 1979, the date of the adjudication hearing, containing "the conditions which were given to" appellant "for his delayed disposition." Appellant had complied with the direction of the probation officer that he sign such instrument. The probation officer testified that the hearing on February

4, 1980, had been held at his request because he felt that appellant had violated such conditions. He also stated that appellant, in his opinion, had violated "the order of the court." He had requested the hearing to request that appellant be committed to the Texas Youth Council. His testimony makes it clear that he considered the conditions which appellant had signed on September 11, 1979, as "an order of the court" and that they represented "what the judge ordered him, verbally as well." The probation officer testified that in Bexar County a child is required to sign "what is entitled Probation Conditions" if the child is actually placed on probation or "if he is placed on a delayed disposition." The custom in Bexar County also seems to be that if a child, who has been placed on probation following a disposition hearing or whose disposition hearing has been indefinitely delayed, violates the "Probation Conditions," he is committed to the Texas Youth Council.

In this case the probation officer testified that the judge, in cases of delayed disposition, "simply orders the probation officer to give [the child] his conditions or something to that effect." The record before us reflects no such action by the trial judge. The probation officer, in establishing the conditions with which appellant would be required to comply pending the indefinitely postponed disposition hearing, exercised his own discretion and relied on the "custom" of the probation department.

When the State moved that appellant be committed to Texas Youth Council, the judge said that appellant had already been committed two years earlier by another judge, and that he would simply sign a written order of commitment. The only commitment order in the record is that signed by the judge who conducted the last hearing.

The written order, after referring to the adjudication of delinquency on September 11, 1979, recites that at the disposition hearing held on February 25, 1980, appellant was found to be a child "who has engaged in Delinquent Conduct and is in need of rehabilitation and the protection of the child and the protection of the public requires that disposition be made."

The order then recites that the case came on to be heard for disposition on April 20, 1982, and that the court finds that appellant was committed to Texas Youth Council on April 25, 1980, and that the order of commitment should be reduced to writing on "this [April 29, 1982] day."

As required by TEX.FAM.CODE ANN. § 54.03(f) (Vernon 1975), the order recites the following reasons for the disposition: (1) Probation is not an appropriate disposition; (2) appellant failed to respond appropriately "to attempts at rehabilitation" after the court had, on September 11, 1979, and February 4, 1980, admonished him concerning "the consequences of his acts"; (3) appellant failed to comply with the reasonable and proper conditions imposed by the Juvenile Probation Department "while disposition has been withheld by the court"; (4) appellant failed to appear in court on February 25, 1982, as ordered by the court; (5) the serious nature of the offense and appellant's propensity for continued antisocial behavior required that he be committed to Texas Youth Council.

Appellant's sole complaint is that his commitment to Texas Youth Council was the end result of a process involving informal or de facto probation and subsequent revocation of such probation under the guise of a disposition hearing. He contends that the entire proceedings following the adjudication of delinquency were "outside the statutory provisions of the Texas Family Code" and constituted a violation of his "due process rights."

We agree that the entire procedure was somewhat irregular and reflects less than a serious attempt to follow the statutory provisions governing procedure in a juvenile delinquency case. This is particularly true of the custom which allows the probation officer to impose "conditions" prescribing the restrictions on the conduct of the juvenile who is awaiting disposition, especially in view of the belief, if not practice, of the probation department that a child may be committed to Texas Youth Council for failure to conform to the restrictions placed on him with no judicial sanction whatever.

However, we see nothing improper in the action of the trial court in admonishing appellant that his conduct between the time of the adjudication and the disposition hearing would be considered at the time of disposition, and in telling the child that he would be expected to attend school regularly during the interim. The commitment to Texas Youth Council at the February 25, 1980, hearing, was not based on a violation of any "condition" unilaterally imposed by the probation department. It was based on appellant's failure to appear in court as ordered by the trial judge and on his leaving Bexar County without permission, as well as on the fact that he had committed burglary. Despite the failure to adhere strictly to the prescribed procedures, we cannot conclude that the irregularities resulted in harm to appellant. The net result of the fact that appellant was given a second and third chance was to postpone his commitment to Texas Youth Council for more than two years. He has no cause for complaint, particularly in view of the fact that he seemed entirely willing to accept the second and third chances offered to him rather than be immediately committed to Texas Youth Council. We find no denial of Constitutional rights in the action of the court in postponing disposition in order to determine appellant's willingness and ability to conform to socially acceptable norms of behavior.

Appellant raises no questions concerning notice or the opportunity to be heard. He does not suggest that the evidence heard by the court is not sufficient to support the conclusion that commitment to Texas Youth Council was the proper disposition in this case. *See In the Matter of A.B.R.*, 596 S.W.2d 615 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

The judgment of the trial court is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

CANTU, Justice.

We have reexamined appellant's sole contention on appeal and conclude that we

were in error in narrowing the scope of his complaint.

Our original opinion readily recognized that "the entire procedure [employed] was somewhat irregular and reflects, less than a serious attempt to follow the statutory provisions governing procedure in a juvenile delinquency case."

We further recognized that appellant's complaint addressed "due process" violations and non-adherence to statutory provisions during the proceedings in question. Nevertheless, we erroneously concluded that questions of notice or the opportunity to be heard were not being raised for review.

From the beginning through his instrument entitled "Motion to Discharge Respondent and in Opposition to State's Request for Disposition Hearing," appellant has complained of a failure by the State and juvenile court to guarantee him the due process considerations afforded by the Texas Family Code, particularly those enumerated under sections 54.04 and 54.05.

Both of these sections dealing with Disposition Hearings and Hearings to Modify Dispositions clearly require notice or disclosure of items to be considered and a hearing.

The transcription of testimony contained in the record reflects appellant's counsel's concern over procedural safeguards and apparent due process shortcomings inherent in the juvenile court's handling of the case. Appellant's brief on appeal echoes the same concern. In each instance appellant expresses concern about a failure to guarantee the rights afforded under sections 54.04 and 54.05. It is the right to notice and hearing which have always concerned appellant and which we now recognize to be at the crux of his appellate complaint. When viewed in this light it is apparent that our original disposition was premised upon an erroneous approach to the question before us.

In his original brief and on rehearing appellant directs the court's attention to *Rogers v. State*, 640 S.W.2d 248 (Tex.Crim. App.1982). Although *Rogers* involves revocation of probation in a criminal case, the facts are remarkably similar.

■ The majority holding in *Rogers* stands for the proposition that constitutional deprivations may not be raised on appeal or will be considered waived, where no objection is lodged at the trial level. A majority of that court, apparently, agrees that the procedures employed by the trial court were in violation of due process considerations.[1]

Waiver does not enter into this case since we now recognize that appellant's appellate complaint has uniformly been the same since the trial court level.

Whether appellant was given a second and third chance and was willing to accept the benefits offered by the juvenile court should not and cannot have any bearing on whether his liberty can be subsequently terminated without some effort to afford protected statutory and constitutional safeguards.

It is arbitrariness that sections 54.04 and 54.05 seek to prevent. The procedures employed by the juvenile court, apparently as an accepted practice by the juvenile probation office in Bexar County under the label of "delayed disposition," appear to be no more than a thinly veiled specie of continued or subsequent probation. Indeed the probation officer could not distinguish "delayed disposition" from probation either in theory or in practice. Even the same written conditions of probation are employed in "delayed disposition" for lack of a prepared form to fit the occasion.

■ We hold that appellant was entitled to notice and hearing prior to termination of the modified conditional liberty granted by the trial court.

Our opinion is not intended to mean that the procedure labeled "delayed disposi-

---

**1.** The procedures in *Rogers* which were condemned by an apparent majority of the court were condemned for the very reasons we con-

doned in our original opinion leading to affirmance.

tion," may never be terminated without complying with sections 54.04 and 54.05 if the procedure in fact amounts to a continuance of a hearing as opposed to continuance of conditional liberty following some modification of the terms imposed incident to the granting of probation originally.

What we hold is that the procedures employed in this case extracted additional concessions from appellant as the price for an extension of his liberty and that the liberty thus extended may not be arbitrarily taken away. *Rogers v. State, supra.* There is no distinction to be drawn between the rights guaranteed to the probationer in *Rogers* and those enuring to the benefit of the juvenile appellant. *See generally In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Franks v. State,* 498 S.W.2d 516 (Tex.Civ. App.—Texarkana 1973, no writ).

Appellant's motion for rehearing is granted, the cause is reversed and remanded to the juvenile court.

Before the court en banc.

### ON STATE'S MOTION FOR REHEARING EN BANC

PER CURIAM.

We overrule the State's Motion for Rehearing En Banc and believing our holding on Appellant's Motion for Rehearing to be correct reaffirm that position.

The State, however, points out that appellant has now reached the age of eighteen and that our disposition requiring a remand to the juvenile court is incorrect. We have reexamined the record and conclude that the State is correct.

Appellant attained the age of eighteen on July 15, 1984, four days after the delivery of our opinion on Appellant's Motion for Rehearing. The State suggests that a proper disposition under the circumstances is to vacate the judgment of the juvenile court and to order the case dismissed. Appellant never challenged the trial court's finding of delinquency, therefore, that adjudication is not subject to disturbance.

The order of disposition we have held was impermissibly entered and that order is vacated and set aside.

 Inasmuch as appellant was only entitled to a new disposition hearing, which may not now be held because of appellant's age, there can be no remand to the juvenile court. The proceedings against appellant are, therefore, dismissed. *State v. Casanova,* 494 S.W.2d 812 (Tex.1973).