13 S.W.3d 854 (2000)
In the Matter of C.C.
No. 03-98-00651-CV.
Court of Appeals of Texas, Austin.
March 2, 2000.
*855 Robert C. Decarli, Law Offices of Decarli & Irwin, Austin, for Appellant.
Susan Ann Snyder, Asst. Dist. Atty., Austin, for State.
Before Justices JONES, YEAKEL and PATTERSON.

ON MOTION FOR REHEARING
LEE YEAKEL, Justice.
We withdraw our original opinion and judgment issued December 2, 1999 and substitute this opinion on appellant's motion for rehearing.
After appellant C.C., a juvenile, waived his right to a jury trial, the district court sitting as the Juvenile Court of Travis County found that he engaged in delinquent conduct by possessing more than one gram but less than four grams of cocaine. See Tex. Fam.Code Ann. § 54.03 (West Supp.2000);[1] Tex. Health & Safety Code Ann. § 481.115(c) (West Supp.2000); Tex. Penal Code Ann. § 12.34 (West 1994). The juvenile court ordered appellant transferred to the custody of the Texas Youth Commission ("TYC") for an indeterminate period. In four issues, appellant argues that (1) the juvenile court abused her discretion by sending appellant to TYC for a single, nonviolent offense and by not following the Progressive Sanctions Guidelines in the Family Code; (2) the record does not support the juvenile court's finding that reasonable efforts had been made *856 to prevent the removal of appellant from his home; (3) appellant was not properly admonished before he gave a judicial confession; and (4) appellant's constitutional rights to due process were violated because (a) before he confessed, he received no notice that he could be sent to TYC, (b) he received improper notice that he could go to TYC for breaking the terms of his release, (c) he did not receive reasonable notice of his adjudication hearing, and (d) he was punished for the wrongs of his siblings. We will affirm the juvenile court's judgment.

BACKGROUND
The details of appellant's offense are not in dispute; rather, appellant complains about the procedures employed by the juvenile court after he was taken into custody. Our factual discussion, therefore, will center on what happened to appellant after he committed the crime. On May 5, 1998, the State filed a petition alleging that appellant, then seventeen years of age, had violated the Health & Safety Code by possessing cocaine. See Tex. Health & Safety Code Ann. § 481.115(c). On May 18, appellant signed a "Conditions of Release," which listed several conditions that appellant must follow or face a return to custody at the Gardner-Betts Detention Center. These conditions included: obeying all laws, meeting with his assigned probation officer, not using controlled substances, and abiding by the rules of Southwest Key.[2] The State's petition remained pending and appellant filed a motion to suppress the tangible evidence against him.
On June 16, appellant's assigned probation officer, Kay Hester, filed a court summary detailing appellant's situation. According to Hester, appellant had experienced problems for the two years preceding his drug charge. Appellant had abused drugs and alcohol since he was eleven; he dropped out of school when he was in eighth grade; he had not held a stable job since dropping out; and he had been a member of a gang. Appellant's family life was chaotichis father was in jail for assaulting his mother, who is disabled and does not work, and two of appellant's siblings have been involved with juvenile court. At about the time of her summary, Hester requested that appellant be taken into custody because he had violated terms of the May 18 "Conditions of Release" by being unaccountable to Southwest Key and by using cocaine. But Hester noted that appellant did not meet ideal placement criteria for TYC, and if committed he would be classified as a general offender and serve a minimum of nine months. On June 18, after a hearing, the juvenile court ordered that appellant be detained for violating the May 18 "Conditions of Release."
On June 25, appellant was released from detention and sent to Recovery Ranch, a drug-treatment program. Appellant signed a second "Conditions of Release," in which he acknowledged, inter alia, that he must obey the staff at Recovery Ranch, obey all laws, avoid controlled substances, and participate fully in the Recovery Ranch program.
On July 23, appellant appeared before the juvenile court for a hearing on his motion to suppress. However, when the juvenile court called the case, appellant announced he would go forward with a judicial confession. The court questioned appellant about his knowledge of the proceedings in general and the following exchange occurred:
THE COURT: And I also understand that you are asking today for me to accept what is called a judicial confession; that you would admit that you committed this offense in return for me allowing you the opportunity to go through whatever treatment program is needed, and perhaps other matters that I might order you to do, in lieu of a criminal record.
APPELLANT: Yes, ma'am.

*857 THE COURT: But understanding that if you fail anything I tell you to do, you've already confessed, and you waive your right to a motion to suppress; it's gone; it's over with, and you will be convicted of this felony.
APPELLANT: Yes, ma'am.
THE COURT: And you will have a criminal record for life.
APPELLANT: Yes, ma'am.
THE COURT: So you don't have to do this.
APPELLANT: I know.
Appellant then admitted possessing cocaine as charged in the State's petition.
During the hearing, Hester told the court that appellant's siblings were on probation. The court did not place appellant on probation, observing that appellant was already receiving all the treatment possible, the juvenile system was already tracking his family through the other siblings, and the court could send appellant to TYC if he did not follow her orders. The court did not adjudicate appellant, but ordered him to complete the program at Recovery Ranch and to earn a high-school-equivalency degree (GED). She stated that she wanted to reassess appellant in four months to determine his progress with his drug-treatment program. The court also warned appellant:
THE COURT: If he [sic] messes up, you've already confessed to this crime; I will adjudicate you on that date and you'll be out of here.
APPELLANT: Yes, ma'am.
THE COURT: Agreeable?
APPELLANT: Yes, ma'am.
In October, appellant was released from Recovery Ranch and signed a third "Conditions of Release" in which he promised to meet with his probation officer on a weekly basis, avoid controlled substances, avoid negative peers, abide by the Recovery Ranch outpatient program, comply with the rules of Southwest Key, and become employed. Soon after being released, a capias was issued for appellant because appellant violated terms of his release; specifically, he missed two visits with his probation officer, he was unaccountable to Southwest Key on two occasions, and he missed two sessions of his outpatient program.
On October 27, the juvenile court conducted a hearing at which she accepted appellant's prior confession and adjudicated him delinquent. The court heard testimony from Hester, who testified that appellant violated various terms of the third "Conditions of Release," including missing three outpatient sessions at Recovery Ranch, being unaccountable to Southwest Key in excess of six times, associating with negative peers, and admitting that if tested on that day he would be positive for cocaine and marihuana. Hester recommended that appellant be committed to TYC. The court concurred and committed appellant to TYC for an indeterminate period.

DISCUSSION
Commitment to TYC
In his first issue, appellant contends that the juvenile court abused her discretion by committing him to TYC for a single, nonviolent offense and by not following the Progressive Sanctions Guidelines in the Family Code. See Family Code §§ 59.001-.015 (West 1996 & Supp.2000).[3] For the offense of possession of a controlled substance, the Progressive Sanctions Guidelines recommend probation for six to twelve months. See Family Code §§ 59.003(a)(3), .006 (West Supp.2000). Instead of placing appellant on probation, the juvenile court committed appellant to TYC. To the extent that appellant's issue *858 complains about the juvenile court's failure to follow the Progressive Sanctions Guidelines, it is overruled because the Family Code prohibits a child from complaining on appeal about the court's failure to make a sanction level assignment. See Family Code § 59.014(2) (West Supp.2000);[4]In re A.S., 954 S.W.2d 855, 861 (Tex.App.-El Paso 1997, no pet.) (rejecting complaint that court abused its discretion by sending juvenile to TYC rather than following the Progressive Sanctions Guidelines on same statutory grounds). We also note that these guidelines are not mandatory: "Nothing in this chapter prohibits the imposition of appropriate sanctions that are different from those provided at any sanction level." Family Code § 59.003(e) (West Supp.2000).
Appellant's argument that the juvenile court abused her discretion by committing him to TYC for a single, nonviolent offense combines with appellant's second issue that there is legally and factually insufficient evidence to support the juvenile court's finding that all reasonable efforts were made to eliminate the need to remove appellant from his home. In sum, appellant contends the evidence is insufficient to support the juvenile court's disposition order. Appellant specifically complains that he should have been placed on probation before being sent to TYC.
The juvenile court is permitted to commit a child to TYC if:
(1) it is in the child's best interest to be placed outside the child's home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and (3) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.
Family Code § 54.04(i) (West 2000). The juvenile court found that these criteria were satisfied.
The juvenile court's findings are reviewable for legal and factual sufficiency. See A.S., 954 S.W.2d at 861. To determine whether the evidence is legally sufficient in juvenile cases, this Court applies the criminal standard of review: "We view the evidence in the light most favorable to the finding and determine whether any rational trier of fact could have found the elements of the requirement proven beyond a reasonable doubt." In re M.S., 940 S.W.2d 789, 791-92 (Tex.App.-Austin 1997, no writ) (citing P.L.W. v. State, 851 S.W.2d 383, 387 (Tex.App.-San Antonio 1993, no writ)).[5]
We conclude that there is legally sufficient evidence that reasonable efforts were taken to prevent the need to remove appellant from his home and to make it possible for appellant to return to his home. Appellant was conditionally released from custody at least three times and violated at least two of those orders. Appellant was placed under the supervision of Southwest Key twice and both times was unable to comply with its rules. Appellant was sent to Recovery Ranch, the only drug-treatment center available to him, for over three months to recover from his drug addiction but was admittedly using drugs only weeks after his release. The juvenile court used all reasonable resources available to avoid committing appellant to TYC; unfortunately, appellant did not respond to these efforts. We hold that there is legally *859 sufficient evidence to support the juvenile court's section 54.04(i) findings.
In reviewing factual sufficiency, we consider and weigh all of the evidence, and if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the disposition order and remand the case for a new disposition hearing. See In re K.L.C., 972 S.W.2d 203, 206-07 (Tex.App.-Beaumont 1998, no pet.). We hold that the evidence detailed above is factually sufficient to support the juvenile court's finding that reasonable efforts were made to prevent the need to remove appellant from his home and to make it possible for appellant to return to his home.
Once the juvenile court has properly made the findings required by section 54.04 of the Family Code, its discretion to determine disposition attaches. "[T]he juvenile court possesses broad discretion to determine a suitable disposition of a child adjudicated delinquent." In re J.R., 907 S.W.2d 107, 110 (Tex.App.-Austin 1995, no writ). Absent an abuse of discretion, a juvenile court's findings should not be disturbed. See M.S., 940 S.W.2d at 791. A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); see also In re J.P.O., 904 S.W.2d 695, 702 (Tex.App.-Corpus Christi 1995, writ denied) (Butts, J., concurring) (citing Downer, 701 S.W.2d at 241-42). This Court may not reverse for abuse of discretion merely because we disagree with the decision of the trial court. See Buller, 806 S.W.2d at 226; Downer, 701 S.W.2d at 242; see also J.P.O., 904 S.W.2d at 702 (Butts, J., concurring) (citing Downer, 701 S.W.2d at 242).
Appellant urges that a juvenile court does not have the discretion to send a juvenile to TYC without first placing him on probation. We find no authority for such proposition and appellant directs us to none. Appellant's sole authority is In re L.G., 728 S.W.2d 939 (Tex.App.-Austin 1987, writ ref'd n.r.e.). In L.G., we vacated a juvenile's commitment to TYC. See L.G., 728 S.W.2d at 941. Like appellant, L.G. had been found to have engaged in delinquent conduct by possessing cocaine but had no prior referrals. See id. at 941, 945. But unlike appellant, L.G. had a supportive family, a stable academic school record, and a positive recommendation for probation. See id. at 945. A proper commitment to TYC may occur when, as here, there has been a negative recommendation for probation from the juvenile's probation officer. See id. We hold therefore that the juvenile court did not abuse her discretion in committing appellant to TYC.
We overrule appellant's first two issues.
Admonishments
In issue three, appellant complains that he was not properly admonished under section 54.03(b) of the Family Code before giving his judicial confession; more specifically, appellant asserts that he was not warned before his confession that confinement at TYC was a possible consequence. See Family Code § 54.03(b). Appellant, however, has not preserved any such error for appeal because he failed to object at trial. Appellant's adjudication is governed by a 1997 amendment to section 54.03. "In order to preserve for appellate... review the failure of the court to provide the child the explanation required by Subsection (b), the attorney for the child must comply with Rule 52(a), Texas Rules of Appellate Procedure...." Family Code § 54.03(i) (West Supp.2000). Rule 33.1 (formerly Rule 52(a)) provides that in order to properly preserve a complaint for appeal, the record must show that the complaint was made to the juvenile court. See Tex.R.App. P. 33.1. Because appellant did not object at the time of trial to the failure to admonish, any error is waived. Appellant relies on the supreme court's holding in In re C.O.S., 988 S.W.2d 760 *860 (Tex.1999), that failure to admonish, if not specifically waived, could be raised for the first time on appeal. See id. at 767. However, the supreme court explicitly recognized that the offense at issue in C.O.S. occurred before the 1997 amendment and thus the amendment did not govern the case. See id. at 761. The court also noted that it was "not making any determination about error preservation in cases arising under the statute since its amendment in 1997." Id. at 767. We hold that the 1997 amendment is controlling in this case and since appellant did not object at trial to the alleged improper admonishments, he waived any right to raise that issue on appeal.
We overrule appellant's third issue.
Due Process
In issue four, appellant asserts that his due process rights were violated in various ways. However, appellant has also failed to preserve this error for appeal. Appellant made no objection to the procedures until appeal. "It is a general rule that appellate courts will not consider any error which counsel for accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court." Rogers v. State, 640 S.W.2d 248, 264 (Tex.Crim.App.1982). This analysis "is applicable to alleged due process violations." Id. at 265. "[S]ince appellant failed to voice any due process objection to the procedures used by the trial court, we hold that he waived his complaint." Id; see also In re M.A.S., 679 S.W.2d 548 (Tex.App.-San Antonio 1984, no writ). This Court likewise holds. Appellant's fourth issue is overruled.
We recognize that implicit throughout appellant's arguments is a complaint about the informal probation procedure used by the juvenile court. Appellant argues that had he been given official probation, he would have received additional procedural protections before the juvenile court could revoke his probation and commit him to TYC. See Family Code § 54.05(d), (f) (West Supp.2000).[6] In appellant's case, however, we have held that probation was never required; therefore, any informal second chances that the juvenile court may have given appellant were within her discretion and do not have to conform to section 54.05 of the Family Code. See Family Code § 54.05 (West Supp.2000).
A juvenile court's informal probation procedures may raise concerns in some cases. Cf. M.A.S., 679 S.W.2d at 551. At the July 23 hearing, the juvenile court heard sufficient evidence to find appellant committed the offense, but the court did not render an order to that effect until October 27. Appellant was adjudicated and disposition was rendered all on the same day. The result of the procedure followed by the juvenile court in this case was to allow appellant additional chances to postpone his commitment to TYC. Appellant was given notice and represented by counsel at all hearings before the juvenile court. Appellant's responses to the court's questions indicated a willingness on his part to accept the court's conditions rather than face immediate confinement to TYC following his confession. The juvenile court's action in postponing adjudication and disposition in order to determine appellant's willingness and ability to conform to socially acceptable norms of behavior did not result in a denial of any constitutional right of appellant. See id.

CONCLUSION
Having overruled appellant's four issues, we affirm the juvenile court's judgment.
NOTES
[1] We will refer to the Texas Family Code as the "Family Code." Section 54.03 was slightly modified by 1999 legislation. See Act of June 19, 1999, 76th Leg., R.S., ch. 1477, § 9, 1999 Tex. Gen. Laws 5067, 5070. Although this case is governed by the previous version of the statute, we will cite to the current statute for convenience because the change does not substantively affect this case.
[2] Southwest Key is an organization that, among other things, monitors juveniles.
[3] Sections 59.003 and 59.005 were slightly modified by 1999 legislation. See Act of June 19, 1999, 76th Leg., R.S., ch. 1477, §§ 20-22, 1999 Tex. Gen. Laws 5067, 5085. Although this case is governed by the previous version of the statute, we will cite to the current statute for convenience because the change does not substantively affect this case.
[4] Section 59.014 was modified by 1999 legislation. See Act of June 18, 1999, 76th Leg., R.S., ch. 1011, § 1, 1999 Tex. Gen. Laws 3795. Although this case is governed by the previous version of the statute, we will cite to the current statute for convenience because the change does not substantively affect this case.
[5] We note, as we did in M.S., that some courts of appeals apply the civil standard of review in juvenile cases. See In re M.S., 940 S.W.2d 789, 792 n. 2 (Tex.App.-Austin 1997, no writ); In re A.S., 954 S.W.2d 855, 860-61 (Tex.App.-El Paso 1997, no pet.).
[6] Section 54.05 was modified by 1999 legislation. See Act of June 19, 1999, 76th Leg., R.S., ch. 1448, § 2, 1999 Tex. Gen. Laws 4919, 4920; Act of June 19, 1999, 76th Leg., R.S., ch. 1477, § 11, 1999 Tex. Gen. Laws 5067, 5070. Although this case is governed by the previous version of the statute, we will cite to the current statute for convenience because the change does not substantively affect this case.