# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00238-CV

## In the Matter of C.R.H.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-19490, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

On April 9, 2002, appellant C.R.H., a juvenile, was adjudicated to have engaged in delinquent conduct and committed to the Texas Youth Commission (ATYC@). *See* Tex. Fam. Code Ann. '' 54.03, .04 (West 2002). C.R.H. appeals, arguing that the evidence is legally and factually insufficient to support the district court=s decision to commit her to TYC. We will affirm.

After C.R.H. pleaded true to the State=s allegation that in March 2002 she committed misdemeanor theft by stealing two pairs of shoes, the district court found that she had engaged in delinquent conduct and proceeded to hold the disposition hearing. *See* Tex. Pen. Code Ann. ' 31.03(a), (e) (West Supp. 2003); Tex. Fam. Code Ann. ' 54.04(a). The only witness to testify at the disposition hearing was Tasha Moore, the probation officer assigned to C.R.H. in February 2002 when C.R.H. was placed on six

months= probation for committing another theft-related offense. Moore testified that, including the present offense, C.R.H. had been adjudicated delinquent a total of four times since September 1999, all for theft or shoplifting offenses. C.R.H. successfully completed six months= probation in 1999. C.R.H. committed the present offense one month into her six-month probation in 2002. Moore said that before she became C.R.H.=s probation officer, C.R.H. had problems with school attendance. Since her release from detention on March 19, C.R.H. had attended her classes every day, but had been late to her first class about three times in that approximately three-week period. She was also sent home early from school once for bad behavior. Moore said that as of March 19, C.R.H. was not passing any of her classes. A drug test taken on March 19 was negative. C.R.H. failed to meet with Moore once, and since then Moore had gone to C.R.H.=s school for their meetings.

Moore recommended that C.R.H.=s prior six-month term of probation be extended to nine months. In addition, she recommended that C.R.H. be placed in Family Preservation and Healthy Relationship Group, and be assigned a mentor through Austin Metro Ministries; all three are new programs that were not offered in 1999 when C.R.H. was first adjudicated delinquent. Moore said that C.R.H.=s family preservation program had been underway for two weeks. C.R.H.=s family was cooperative, but C.R.H. did not attend the second session. Moore was asked why she thought family preservation would be successful if, Aafter only the second time [C.R.H.] is not engaging in it,@ and Moore answered, AWell, we=d like to give it more time to see if it would work.@ Moore believed that extending C.R.H.=s probation to nine months was in the best interests of C.R.H. and the community.

The record includes several court summaries prepared for C.R.H.=s various adjudications. The latest, prepared by Moore in March 2002, indicates that before the present offense, C.R.H. had been referred to the juvenile justice system for five offenses ranging from assault to possession of marijuana to theft, resulting in three adjudications for the earlier theft charges; C.R.H. successfully completed a deferred-prosecution program for the assault and a counseling program for the drug possession. The report indicates that after being placed on probation in February 2002 for the previous theft offense, C.R.H. left her home without permission for several days. C.R.H.=s school reported that Athey try to encourage [C.R.H.] to stay the whole day at school, but she always leaves after being at school for a short while,@ and that she often calls in sick and had Anot been in school even 10% of the time.@ C.R.H. had no passing grades and the school recommended that she go to a GED program, rather than a traditional school program, because she was so far behind. Earlier summaries indicate similar problems such as leaving home without permission, failing to meet with her attorney, behaving badly in school, and failing classes.

In closing, the State=s attorney said,

> Judge, the State would not sign a plea agreement in this case because I do not feel like placing [C.R.H.] in nine-months probation is adequate. I feel like, unfortunately, the system probably has had a part in failing [C.R.H.]. You know, this will be the third time she=s placed on probation. This is actually her sixth referral to juvenile court, for which four of which being theft. I think she just doesn=t seem like there=s any consequence to her actions. And if I were in her shoes, I might feel the same. You know, she=s tardy to school. She doesn=t show up for Family Preservation meetings. She doesn=t show up to meet with her probation officer. What are the consequences? She gets placed on probation again, and nothing B nothing changes.

The district court ruled, AHaving heard this evidence, I find that it is in the community=s best interest, and in your best interest, that today you be committed to the care, custody, and control of the Texas Youth Commission.@

On appeal, C.R.H. argues that the evidence is legally and factually insufficient to support the district court=s findings that (1) commitment to TYC was in her best interest, (2) all reasonable efforts were taken to avoid the need to remove her from her home, and (3) she could not get the care, support, and supervision she needs to meet probation conditions in her home. A trial court may not commit a juvenile to TYC unless it makes those three findings. Tex. Fam. Code Ann. ' 54.04(i)(1) (West 2002); *In re C.C.*, 13 S.W.3d 854, 858 (Tex. App.CAustin 2000, no pet.). We review the legal and factual sufficiency of the evidence supporting a juvenile court=s decision to commit a juvenile to TYC using the standards of review applied in criminal cases. *C.C.*, 13 S.W.3d at 858-59; *In re M.S.*, 940 S.W.2d 789, 792 n.2 (Tex. App.CAustin 1997, no writ). In reviewing the legal sufficiency, we view the evidence in the light most favorable to the trial court=s findings and determine whether a rational trier of fact could have found each criterion beyond a reasonable doubt. *C.C.*, 13 S.W.3d at 858; *M.S.*, 940 S.W.2d at 791-92. In reviewing the factual sufficiency, we view all of the evidence in a neutral light, setting aside the trial court=s order of disposition only if the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *C.C.*, 13 S.W.3d at 859. If a trial court has proper evidentiary support for its findings, it has broad discretion in determining the suitable disposition of the delinquent juvenile. *Id.*; *In re J.R.*, 907 S.W.2d 107, 110 (Tex. App.CAustin 1995, no writ). We will not disturb a trial court=s

4

disposition order absent an abuse of discretion, which occurs if the court acts unreasonably and arbitrarily or without reference to guiding rules and principles. *C.C.*, 13 S.W.3d at 859.

The evidence shows that C.R.H. had been adjudicated delinquent for theft-related offenses four times in less than three years. After completing at least one term of probation, she again committed a similar offense, received another term of probation, and committed the instant offense only one month into that term. She had serious attendance problems in school and, as of March, was failing every class. In the month leading up to the present adjudication, she attended school regularly, but was frequently tardy. She also was sent home from school for bad behavior and failed to meet with Moore as required. Moore had since attempted to accommodate C.R.H. by going to her school for their meetings. She had already missed one of two family-preservation meetings. C.R.H. has a demonstrated history of failed compliance with the terms of probation. Further, her repeated offenses indicate that probation has failed to rehabilitate her delinquent behavior. When viewed in the light most favorable to the district court=s findings, the evidence is sufficient to show (1) that commitment to TYC is in C.R.H.=s best interest, (2) that all reasonable efforts were taken to avoid her removal from home, and (3) that she will not receive in her home the support, care, and supervision necessary to successfully complete probation. *C.C.*, 13 S.W.3d at 858.

Even when all the evidence is viewed in a neutral light, we conclude the evidence is factually sufficient to support the district court=s findings. *See id.* at 859. Although Moore recommended that C.R.H. should be placed on probation yet again, Moore had only recently assumed her duties as C.R.H.=s probation officer. The record includes reports indicating a history of behavior problems and problems complying with probationary terms. Moore=s statement that she believed that C.R.H. would be best served

**5**

being placed on probation does not so outweigh the evidence supporting the district court=s findings as to render the district court=s decision manifestly unjust. *See id.* Nor does the fact that C.R.H. tested negative for drug use or that she had begun to attend school more regularly since her latest detention overwhelm the evidence supporting the district court=s decision. We hold that the evidence is factually sufficient to support the district court=s findings. *Id.*

We overrule C.R.H.=s issues on appeal and affirm the district court=s order.

_____

Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: January 30, 2003