# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00336-CV

**In the Matter of R. S.**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-24,151, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

R.S., a juvenile, was adjudicated delinquent for the offense of possession of a controlled substance. *See* Tex. Fam. Code Ann. §§ 54.03, .04 (West Supp. 2007); Tex. Health & Safety Code Ann. § 481.117 (West 2003). Following a disposition hearing, the trial court ordered R.S. committed to the custody of the Texas Youth Commission (TYC). R.S. appeals, asserting that in reaching its disposition decision, the trial court refused to consider all possible disposition options and instead relied on admonitions given to R.S. by another judge in an earlier delinquency proceeding. We affirm the trial court's disposition order.

A trial court may not commit a juvenile to TYC unless it finds that commitment is in the child's best interest, all reasonable efforts were taken to avoid the need to remove the child from his home, and the child could not get the care, support, and supervision he needs to meet probation conditions in his home. Tex. Fam. Code Ann. § 54.04(i)(1); *In re C.C.*, 13 S.W.3d 854, 858 (Tex. App.—Austin 2000, no pet.). A juvenile court has broad discretion in determining the suitable disposition of a juvenile who has engaged in delinquent conduct. *In re A.I.*, 82 S.W.3d 377,

379 (Tex. App.—Austin 2002, pet. denied). In reviewing the court's decision on disposition, we ask whether the court acted in an unreasonable or arbitrary manner. *Id*. at 379-80. A trial court does not abuse its discretion if some substantive and probative evidence supports its decision. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). Legal and factual sufficiency may be relevant in assessing the trial court's exercise of its discretion, and we review evidentiary sufficiency under the standards applied in criminal cases. *Id*. at 702-04; *see In re C.C.*, 13 S.W.3d at 858-59.

R.S. was sixteen in May 2006, when she committed the offense of possession of hydrocodone within 1000 feet of Westlake High School. As part of a plea agreement, the State abandoned the school-zone allegation, and R.S. pled true to the State's allegations. After adjudicating R.S. delinquent, the trial court proceeded to disposition. The court took judicial notice of R.S.'s file, which reflects that she had been in trouble with the law since 2003 and had been referred to the probation department several times for theft and violation of court orders. She had been placed on probation twice for assault and criminal trespass, and at the time of this offense, was on probation for assault. The probation department's report stated that child protective services had received three referrals on R.S.'s parents for neglectful supervision, her mother was arrested for assaulting R.S., and her two brothers have had legal and drug troubles.

According to the department's report, R.S. had a history of behavior problems at school and skipping classes and she had tested positive for drugs at least once. From December 2005 to January 2006, R.S. "had a total positive turn around," reporting to her probation officer as required, completing community service hours and required classes, and testing negative for drugs. In late January, however, she again tested positive for drugs and got into a fight with her mother.

2

In late February, R.S.'s mother was arrested for assaulting R.S. Because R.S.'s father was in residential drug treatment at the time, R.S. was sent to live with her grandparents in Lampasas. During her time in Lampasas, R.S. "did exceptionally well." She decided to return to her parents, however, against the advice of her grandparents and the probation department. She was warned by another trial court in an earlier proceeding that "if her positive progress made a change for the worse, then she would be sent to TYC." R.S. "stated she would do well at home," and the trial court allowed her to return to Austin. Things seemed to be going well until she was taken into custody less than one month later, returning to her campus in possession of five hydrocodone pills after having skipped classes without permission. The department concluded that R.S. was not an appropriate candidate for ISP staffing because of her "chaotic home environment," her history of non-compliance and "continuing to re-offend," her parent's lack of cooperation and "minimizing behaviors," and R.S.'s need for a structured environment.

The court also heard testimony from Jarrett Boykin, R.S.'s probation officer. He testified that in April 2006, just one month earlier, R.S. "was doing great" and had been living with her grandparents in Lampasas since February. She returned to Austin to be with her parents on April 5, and about one month later, was taken into custody for the subject offense. Boykin testified that R.S. was passing all her classes and was trying to get a job. R.S.'s parents were in the process of getting a divorce, and her father was attending Alcoholics Anonymous meetings every day. Boykin was asked what programs the probation department would recommend for R.S. as an alternative to TYC commitment. He answered, "Currently I staffed her for ISP, which she was turned down for. So the only thing the Department is recommending right now currently is TYC." Asked if there were any other alternatives, Boykin testified,

3

If the Judge so ordered it, I guess she would go to ISP. But right now, we haven't looked at any other—all the other programs are unavailable. We may look into some kind of drug treatment. We could possibly go back and look at residential or IOP. She's ineligible right now for Leadership or any kind of Visions program. So it doesn't leave too many other options other than probably drug treatment.

Boykin said R.S. did "very well" in Lampasas and that the trial court was reluctant to allow her to return to Austin and cautioned her that if she returned to Austin and "messed up," she would be sent to TYC. In closing, R.S.'s attorney asked for another chance, noting that R.S. was getting good grades, looking for work, and obeying curfew. The State asked the court to commit R.S. to TYC, arguing that she had already been given several chances and had left a good situation in Lampasas, having been warned that she would be sent to TYC if she got in more trouble, only to be caught with a controlled substance one month later. The court committed R.S. to TYC, saying, "Why in the world didn't you stay in Lampasas—and that's not a question to you—because what young woman wouldn't want to return home, even though you were just blowing the doors off the place with how well you were doing there in that environment?"

When viewed in the light most favorable to the court's findings, the evidence is sufficient to show that TYC commitment is in R.S.'s best interest, that the department made all reasonable efforts to avoid removing her from her home, and that she cannot receive in her home the support, care, and supervision she needs. *See In re C.C.*, 13 S.W.3d at 858. The same is true when all the evidence is viewed in a neutral light. *See id*. at 859. Although R.S. improved her behavior markedly, less than one month after returning from Lampasas, she again skipped classes and was caught in possession of a controlled substance. She was cautioned about the track she was on, and her grandparents, another trial court, and the probation department all recommended that she stay

4

in Lampasas, but she decided to return to Austin, promising to stay out of trouble. Very shortly after returning to Austin and her parents' care, while on probation for an earlier offense, she was again taken into custody, this time for possession of hydrocodone. The probation department recommended TYC commitment, and her probation officer testified that due to R.S.'s history of criminal offenses and her family's tumultuous circumstances, the department believed she needed the structure that TYC could provide and that the department did not have many options to offer her other than TYC commitment or drug treatment. There is no evidence that the trial court based its decision on the other court's admonishments rather than considering the entire record before it, which included the department's report and recommendations.[1] We cannot hold that the trial court abused its discretion in determining that R.S. would be best served by being committed to TYC custody. *See In re A.I.*, 82 S.W.3d at 379-80. We affirm the trial court's order of disposition.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: July 3, 2008

_____

[1] This record differs from that discussed in *Ex parte Brown*, 158 S.W.3d 449, 451-52, 456-57 (Tex. Crim. App. 2005), in which the trial court reminded the defendant of the court's earlier "promise" to sentence the defendant to twenty years in prison, the maximum penalty available, and then followed through on that promise. The court of criminal appeals held that the record supported another trial court's habeas finding that the sentencing court had pre-judged Brown's punishment. *Id*. at 457. In our case, the record contains evidence independent of the earlier court's admonishment and on which the trial court appears to have relied in reaching its disposition decision; and the court did not remind R.S. of the earlier promise made by a different judge.