**Opinion issued June 3, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00072-CV

———————————

## IN THE MATTER OF J. P.

———————————

**On Appeal from the 98th District Court[1]**
**Travis County, Texas**
**Trial Court Case No. JV36654**

———————————

## MEMORANDUM OPINION

J.P. appeals from the juvenile court's disposition order sentencing him to

commitment in the Texas Juvenile Justice Department on a determinate sentence of

---

[1]     Under its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Third Court of Appeals to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

seven years.[2] In a single issue, J.P. argues the juvenile court abused its discretion in sentencing him because there is legally and factually insufficient evidence for two of its findings, namely, its finding that J.P.'s educational needs will be adequately addressed in TJJD's treatment program and its finding that J.P.'s best interests will be served by committing him to TJJD.

We affirm.

## Background

The State's petition charged 15-year-old J.P. with delinquent conduct, alleging that he committed aggravated assault. *See* TEX. FAM. CODE § 51.03(a); TEX. PENAL CODE § 22.02(a). J.P. pleaded true to the allegation, and the juvenile court signed a judgment of adjudication, finding beyond a reasonable doubt that J.P. committed aggravated assault as alleged in the State's petition. *See* FAM. § 54.03(a). The juvenile court then held a contested disposition hearing. *See id.* § 54.04(a).

At the disposition hearing, the juvenile court took judicial notice of two documents: (1) a court summary report prepared by J.P.'s probation officer and (2) a psychological evaluation prepared by the psychologist who evaluated J.P. to assist TJJD in recommending J.P.'s disposition and treatment. *See id.* § 54.04(b). Because

---

[2]     For a thorough and helpful summary of the Texas determinate sentence system, *see In re J.G.*, 905 S.W.2d 676 (Tex. App.—Texarkana 1995, writ denied).

these documents are crucial to our evidentiary review, we summarize the contents of each in turn.

### *The probation report*

The probation report stated that J.P. lived at home with his mother and her boyfriend, who J.P. considered to be his stepfather. In prior interviews, J.P.'s mother stated that she "sets house rules" but that J.P. "does not always follow them." In particular, J.P.'s mother stated that "she has issues with [J.P.] not following his curfew" and that J.P. "tends to go and come as he pleases."

The report stated that J.P. was currently in 9th grade and eligible for special education services. In summarizing J.P.'s educational background, the report stated that, in first grade, J.P. began to receive behavioral referrals, which reported that J.P. would "run around the classroom" and "throw chairs," requiring that he be restrained. As a result, J.P. was removed from mainstream classes and placed in various alternative learning centers, an arrangement that continued throughout the course of his enrollment in the public school system. In middle school, J.P. was diagnosed with various learning disabilities and began receiving special education services. Around the same time, J.P. began to skip class on a regular basis.

The report continued that, while in the public school system, J.P. was suspended on multiple occasions for smoking marijuana, fighting, and other misconduct. Before his most recent arrest for aggravated assault and placement in

juvenile detention, J.P. briefly attended public high school, where his attendance was minimal, and he was habitually truant. J.P. continued attending school in juvenile detention, where he did well, earning As and Bs.

The report summarized J.P.'s extensive criminal history, which began in 2017 when J.P. was 12 years old. Since 2017, J.P. had been referred to TJJD 21 times for various charges, including burglary of a habitation, burglary of a vehicle, unauthorized use of a vehicle, engaging in organized criminal activity, evading arrest, possession of marijuana in a drug-free zone, violation of court orders, assault, aggravated assault with a deadly weapon, and assault of a public servant. The report indicated that over time J.P.'s delinquent conduct had become increasingly violent; his most recent three referrals had each been for some form of assault.

The report summarized J.P.'s largely unsuccessful treatment history. Since 2017, J.P. had been placed on probation four times and had never successfully completed the terms and conditions imposed. The report stated that while on probation, J.P. often failed to use his electronic monitor, ran away on several occasions, and continued to engage in delinquent conduct, resulting in referrals for additional criminal charges. J.P. had been assigned to at least seven outpatient programs, only one of which he successfully completed. More recently, J.P. had been placed at a residential treatment center for a six-month inpatient program, which J.P. successfully completed. But shortly after his release, J.P. ran away again

4

and remained missing for two months. Shortly after he was found, J.P. was charged with the underlying aggravated assault and placed in a juvenile detention center, where he remained during the pendency of the juvenile court proceedings. While in detention, J.P. had been "aggressive towards staff and other residents, prompting physical restraints on multiple occasions." The report listed eight occasions on which J.P. had to be physically restrained due to his aggressive and violent behavior, including one instance in which J.P. "attempt[ed] to incite a riot" and "seriously injured" a detention officer.

The report stated that J.P.'s most recent psychological evaluation, performed by Dr. David Landers, diagnosed him with (1) Conduct Disorder, Childhood-Onset Type, Severe, (2) unspecified Psychotic Disorder (possibly schizophrenia), and (3) Cannabis Use Disorder. The report stated that J.P. had a history of drug use and had tested positive for marijuana and benzodiazepines on multiple prior occasions. The report further stated that J.P. had a "long history of mental health issues"; was currently taking medications for sleep, ADHD, and an unspecified mood disorder; and had previously received individual and family counseling and therapy.

The report stated that J.P.'s overall risk of reoffending was "high" based primarily on (1) his leisure and recreational activities and lack of interest or participation in "any pro-social unstructured activities;" (2) his associates, consisting exclusively of "anti-social friends," including the juveniles with whom he

committed the underlying aggravated assault; and (3) his antisocial personality, manifested by his "unpredictable and unsafe" decision-making and "tendency towards violence."

The report concluded by stating that J.P. had been afforded "multiple opportunities both in placement as well as in the community" and had "been provided the tools needed to be successful." But, the report continued, J.P.'s "aggression and disregard for rules" had "prevented him from making positive changes" and "resulted in numerous felony referrals" to TJJD affecting "a multitude of victims." "Despite numerous interventions," J.P. "continued to reoffend and violate his probation condition[s], putting himself and the community at risk." The report therefore recommended that J.P. be committed to the care, custody, and control of TJJD or, alternatively, that J.P. be placed in the Travis County Intermediate Sanctions Center. The report emphasized, however, that it "strongly recommended" commitment to TJJD over placement in ISC due to J.P.'s "continued aggressive behavior and lengthy referral history."

***The psychological evaluation***

In the psychological evaluation, the psychologist reiterated and elaborated upon many of the findings of the probation report, explained the bases of his diagnoses, opined that placing J.P. outside his home "seem[ed] necessary," and stated that he "strongly support[ed]" placing J.P. in a residential treatment program.

6

The psychologist stated that he administered an IQ test to estimate J.P.'s level of intellectual functioning. While the results of the IQ test indicated that J.P.'s intellectual functioning was significantly impaired, the psychologist cautioned that the results could have been attributable to untreated mental health issues and that J.P.'s intellectual functioning might be better than his IQ score suggested.

The psychologist stated that, overall, J.P.'s "prognosis appear[ed] mixed." On the one hand, J.P.'s behavioral problems arose at a relatively early age, and his offenses had been "diverse, persistent, and increasingly serious," indicating J.P. was "very immersed" in a "delinquent lifestyle" and would continue to offend. On the other hand, J.P. had "repeatedly" expressed "remorse for his behavior," which the psychologist perceived as being "relatively sincere." The psychologist opined that J.P.'s "psychiatric issues are potentially serious and likely motivating some, if not much, of his delinquent behavior." The psychologist stated that these issues might improve with continued treatment, which, in turn, might improve his behavior.

In his final summary and recommendations, the psychologist remarked that J.P. "seem[ed] remarkably unstable, even in the highly structured environment of detention." The psychologist considered J.P.'s case to be "somewhat atypical in that he seem[ed] to be suffering from some degree of psychosis," which was "highly likely influencing his behavioral problems." The psychologist therefore opined that it would be "critical" for J.P. to receive services in a "facility staffed with

professionals who are competent at working with potentially severe mental illness." The psychologist further opined that "medication management" would likewise be "critical" in treating J.P. The psychologist concluded that if J.P. could be "stabilized clinically," his anger and behavioral problems "may improve."

### *Other evidence*

In addition to the probation report and psychological evaluation, the juvenile court considered a video of the underlying assault and heard testimony from five witnesses: (1) J.P.'s probation officer, (2) the detention officer who J.P. injured while attempting to incite a riot, (3) the psychologist who evaluated J.P., (4) the complainant, and (5) the complainant's father.

### *The disposition order*

After hearing the evidence and arguments of both sides, the juvenile court ruled on the State's petition and signed its disposition order. In its disposition order, the juvenile court found, as relevant here, that:

- J.P. is in need of rehabilitation, and the protection of the public and J.P. requires that a disposition be made;

- J.P. has engaged in delinquent conduct that included a violation of a penal law listed in Section 53.045(a) of the Family Code;

- there is a need for J.P. to be placed outside the home;

- J.P., in J.P.'s home, cannot be provided the quality of care and the level of support and supervision he needs to meet the conditions of probation;

- all reasonable efforts were made to prevent or eliminate the need for J.P.'s removal from home and to make it possible for J.P. to return home;

- the educational needs of J.P. have been assessed in the Court Summary prepared by the Probation Officer and will be adequately addressed in the TJJD treatment program prepared for J.P.; and

- the best interest of J.P. and the best interest of society will be served by sentencing J.P. to a determinate sentence commitment for seven years beginning in the TJJD with a possible transfer to the Texas Department of Criminal Justice.

*See id.* § 54.04(c), (d)(3), (i)(1)(A)–(C).

The juvenile court ordered that J.P. be committed to TJJD on a determinate sentence of seven years with a possible transfer to the Texas Department of Criminal Justice–Institutional Division, in accordance with Family Code, Section 54.11.

J.P. appeals.

## Discussion

In a single issue with two subparts, J.P. argues the juvenile court abused its discretion in sentencing him because there is legally and factually insufficient evidence for its findings that (1) J.P.'s educational needs will be adequately addressed in TJJD's treatment program and (2) J.P.'s best interests will be served by committing him to TJJD. The State responds that the findings are supported by sufficient evidence.

9

## A. Applicable law and standard of review

The Juvenile Justice Code, codified in sections 51.01 through 61.107 of the Family Code, governs all proceedings in cases involving the delinquent conduct of children. *In re J.G.*, 495 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Under the Code, a juvenile court may sentence a child to commitment in TJJD if certain conditions are met. *See* FAM. § 54.04.

When, as here, a child is found to have engaged in the delinquent conduct of aggravated assault, the juvenile court may commit the child to TJJD upon finding that:

- it is in the child's best interests to be placed outside the child's home;

- reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

- the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

*Id.* § 54.04(i)(1). These "three statutory findings are essential, but other evidence may also justify a trial court's disposition order committing a [child] to [TJJD]." *In re E.K.G.*, 487 S.W.3d 670, 676 (Tex. App.—San Antonio 2016, no pet.).

We review a juvenile court's disposition order committing a child to TJJD for abuse of discretion. *See In re C.C.*, 13 S.W.3d 854, 859 (Tex. App.—Austin 2000, no pet.). In determining whether the juvenile court abused its discretion, we review

10

the court's findings for legal and factual sufficiency, applying the criminal standards of review.[3] *See id.* In reviewing a finding for legal sufficiency, we view the evidence in the light most favorable to the finding and determine whether any rational trier of fact could have so found beyond a reasonable doubt. *Id.* In reviewing a finding for factual sufficiency, we consider and weigh all the evidence and determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

## B.     Analysis

J.P. challenges the evidentiary sufficiency of the juvenile court's educational-needs finding and best-interests finding. We address each finding in turn.

### 1.     Educational-needs finding

In its disposition order, the juvenile court found that J.P.'s "educational needs" would be "adequately addressed" in TJJD. J.P. contends the State presented no evidence in support of this finding. At a disposition hearing, J.P. explains, the

---

[3]     We note that while our court has applied the civil standard, *see, e.g.*, *In re Y.N.L.*, No. 01-18-00269-CV, 2018 WL 6175320, at *3 (Tex. App.—Houston [1st Dist.] Nov. 27, 2018, no pet.) (mem. op.), we must apply the criminal standard here, since that is the standard applied by the Austin court of appeals, *In re C.C.*, 13 S.W.3d 854, 859 (Tex. App.—Austin 2000, no pet.), the court from which this case has been transferred, *see* TEX. R. APP. P. 41.3 ("In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court.").

State normally presents at least one witness who testifies about the child's educational needs and the services and programs offered by TJJD to address these needs. But, J.P. continues, the State presented no such witness here. The only TJJD official presented by the State was J.P.'s probation officer, who testified to neither J.P.'s educational needs nor the available TJJD programs and services available to address them. Thus, J.P. concludes, the State presented no evidence on which the juvenile court could have based its educational-needs finding. We disagree.

The probation report and psychological evaluation both addressed J.P.'s educational background and current educational needs. Both contained evidence indicating that, to address J.P.'s educational needs, TJJD would have to provide treatment for three underlying issues: (1) J.P.'s aggressive and disruptive behavior, (2) J.P.'s mental health, and (3) J.P.'s habitual truancy. J.P.'s probation officer testified that, in his experience, TJJD had programs and services to address the first two issues. And committing J.P. to TJJD (and thereby preventing him from skipping school) would obviously address the third issue.

Moreover, the probation report, in its summary of J.P.'s educational background, remarked that J.P. had continued attending school in juvenile detention, where he did well, earning As and Bs. The report further remarked that J.P. had stated he wanted to graduate from high school and pursue a career as an auto

mechanic. These remarks indicate that J.P. would benefit from attending school within the structured and secure environment of TJJD.

We hold the juvenile court's finding that J.P.'s "educational needs" would be "adequately addressed" in TJJD is supported by legally and factually sufficient evidence. *See, e.g.*, *In re J.B.*, No. 01-13-00844-CV, 2014 WL 6998068, at *4 (Tex. App.—Houston [1st Dist.] Dec. 11, 2014, no pet.) (mem. op.) (holding sufficient evidence supported juvenile court's educational-needs finding when evidence showed child had been suspended for tardiness and fighting, run away from home, tested positive for marijuana, and would benefit from services "that would allow his behavior to be more closely monitored"); *In re J.K.N.*, 115 S.W.3d 166, 172–73 (Tex. App.—Fort Worth 2003, no pet.) (holding sufficient evidence supported juvenile court's educational-needs finding when probation officer testified that child's criminal activity had "become more frequent and more severe" and that TYC would offer appropriate treatment for child's psychiatric needs and "a structured, secure environment" in which child could "pursue academic activities"). We now turn to the juvenile court's best-interests finding.

### 2. Best-interests finding

In its disposition order, the juvenile court found that it is in J.P.'s best interests that he be committed to TJJD on a determinate sentence of seven years. J.P. contends the State presented no evidence in support of this finding.

J.P. emphasizes that no witness testified about the specific programs and services offered by TJJD to rehabilitate J.P. or treat his mental health issues. While such testimony would have lent further support to the juvenile court's best-interests finding, neither the statutory text nor the caselaw interpreting it require such evidence to make a best-interests finding. Here, the juvenile court could have considered the absence of such evidence and weighed it against other evidence showing that J.P. had:

- committed a serious violent offense that nearly killed the complainant;

- been unable to control himself even under the restrictions of detention;

- an extensive criminal history reflecting that J.P.'s offenses had grown increasingly violent over time;

- failed to complete or be rehabilitated by various programs and services ordered for prior offenses;

- parents who were unable or unwilling to control him;

- various behavioral and mental health issues, which the probation officer generally testified could be addressed by TJJD.

*See, e.g.*, *In re Y.N.L.*, No. 01-18-00269-CV, 2018 WL 6175320, at *4 (Tex. App.—Houston [1st Dist.] Nov. 27, 2018, no pet.) (mem. op.) ("Given the gravity of the offense and his inability to control his behavior under the restrictions of detention, we hold that the juvenile court acted within its discretion in concluding that the youth's best interests, as well as those of the community, warranted committing the

14

youth to TJJD."); *In re V.A.G.*, 528 S.W.3d 172, 176 (Tex. App.—El Paso 2017, no pet.) (holding sufficient evidence supported juvenile court's disposition order committing child to TJJD when child committed assault of public servant and had been provided intensive in-home counseling services and community-based supervision but had made minimal progress and continued to disregard conditions of probation); *In re A.E.E.*, 89 S.W.3d 250, 255–56 (Tex. App.—Texarkana 2002, no pet.) (holding sufficient evidence supported juvenile court's disposition order placing child outside parent's home when child's counselor testified that if placed with parent child might harm herself or her parent and might run away; child and parent resisted participation in court-ordered counseling; and child testified that parent lacked interest in her schoolwork and was inattentive to her medical needs and that she would run away if required to continuing living with him); *In re J.K.N.*, 115 S.W.3d 166, 171–73 (Tex. App.—Fort Worth 2003, no pet.) (holding sufficient evidence supported juvenile court's disposition order committing child to TYC when social history report showed child had committed numerous previous offenses and been offered varied forms of treatment and probation and probation officer testified that TYC offered structured environment conducive to rehabilitation and treatment for child's psychiatric needs); *In re M.A.C.*, 999 S.W.2d 442, 447–48 (Tex. App.—El Paso 1999, no pet.) (holding sufficient evidence supported juvenile court's disposition order committing child to TYC when, *inter alia*, child refused to attend

15

school, did not obey curfew set by mother, and failed to complete community service ordered for prior offense).

In raising his sufficiency challenge, J.P. emphasizes that the probation officer and psychologist presented favorable testimony regarding an alternative placement option for J.P., the ISC. Still, the probation officer testified, and the probation report emphasized, that commitment to TJJD was "strongly recommended" over placement in ISC. And the psychologist conceded that he did not know if TJJD was "better equipped" to handle J.P. than the ISC. Regardless, a juvenile court does not abuse its discretion by basing its finding on conflicting evidence. *In re A.D.*, 287 S.W.3d 356, 366 (Tex. App.—Texarkana 2009, pet. denied).

We hold the juvenile court's finding that it is in J.P.'s best interests that he be committed to TJJD is supported by legally and factually sufficient evidence. Accordingly, we overrule J.P.'s sole issue.

## Conclusion

We affirm.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

16