**In the Matter of A.S., A Juvenile.**

No. 08–96–00348–CV.

Court of Appeals of Texas,
El Paso.

Sept. 11, 1997.

Sharon Letson Weathers, Midland, for appellant.

Russell W. Malm, County Attorney, Midland, for appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

A.S., a juvenile, appeals from an order adjudging him delinquent and committing him to the Texas Youth Commission. A.S. challenges the legal and factual sufficiency of the evidence to support the jury's finding that he committed the offense of burglary of a building. He also asserts that the juvenile court abused its discretion by deviating from the progressive sanction guidelines. We affirm the adjudication order but reverse the disposition order and remand for further proceedings.

### SUMMARY OF THE FACTS

At approximately 3:25 a.m. on October 25, 1995, Corporal James White of the Midland Police Department was dispatched to the Midland Park Mall because a burglar alarm at the Beall's Department Store had been set off. White arrived at the mall in about three minutes. He walked to the rear of Beall's and saw a male individual, later identified as the co-defendant R.C.C., standing in an open doorway of a power room and looking into the parking lot. After looking in White's direction, R.C.C. walked back into the room. Believing he had been seen, White walked to the door. White looked into the room and asked A.S. and R.C.C. what they were doing. R.C.C., who was extremely nervous and sweating, told White that they were with maintenance and were checking the lights. A.S. also appeared nervous. After a brief conversation, both R.C.C. and A.S. suddenly ran past White out of the room. White managed to grab R.C.C., but A.S. escaped and ran around the building. R.C.C. and White struggled in the parking lot while White attempted to restrain him. At one point, R.C.C. began to push White back towards the power room door rather than attempting to escape into the parking lot. Alarmed by this action, White instinctively looked over his shoulder and saw a crowbar coming down at him. The crowbar struck White on the left shoulder causing his arm to immediately become completely numb. White threw R.C.C. to the ground with his right hand and he turned to face his attacker, later identified as Marcos Sanchez. White drew his weapon and warned Sanchez to drop the crowbar. Despite White's command to stop, Sanchez continued to move towards him with the crowbar raised. Believing Sanchez was going to hit him again, White fired a single shot, striking Sanchez in the chest. Sanchez later died from the gunshot wound. R.C.C. was taken into custody immediately. A.S. was found later that same morning and taken into custody. White required extensive surgery to his shoulder as a result of the blow from the crowbar.

The petition filed by the State alleged that A.S. engaged in delinquent conduct by committing the offenses of felony murder, burglary of a building, and aggravated assault on a public servant. The charge permitted the jury to find A.S. committed each of these offenses either as a primary actor or as a party. The jury found that A.S. did not commit felony murder or aggravated assault on a public servant, but found that he committed the offense burglary of a building.

### SUFFICIENCY OF THE EVIDENCE

In Point of Error No. One, A.S. alleges that the evidence is legally insufficient to support the jury's finding that he committed the offense of burglary of a building. Before addressing the merits of this issue, we must determine whether we will apply the civil "no evidence" standard or the legal sufficiency standard required in criminal cases.

Consistent with the Fourteenth Amendment guarantee of due process of law, no person may be convicted of a criminal offense and denied his liberty unless his criminal responsibility for the offense is proved beyond a reasonable doubt. *Alvarado v. State,* 912 S.W.2d 199, 206–07 (Tex. Crim.App.1995), *citing In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). As a matter of due process, the case against a juvenile must also be proved beyond a reasonable doubt. *Winship,* 397 U.S. at 368, 90 S.Ct. at 1075. Consequently, the Juvenile Justice Code requires

that the State prove beyond a reasonable doubt that the child has engaged in delinquent conduct or conduct indicating a need for supervision. TEX.FAM.CODE ANN. § 54.03(f) (Vernon 1996); *see In the Matter of M.M.R.*, 932 S.W.2d 112, 113 (Tex.App.—El Paso 1996, no writ); *In the Matter of G.M.P.*, 909 S.W.2d 198, 201–02 (Tex.App.—Houston [14th Dist.] 1995, no writ); *In the Matter of C.D.F. v. State*, 852 S.W.2d 281, 284 (Tex.App.—Dallas 1993, no writ); *In the Matter of S.D.W.*, 811 S.W.2d 739, 749 (Tex. App.—Houston [1st Dist.] 1991, no writ). In *Jackson v. Virginia*, the United States Supreme Court found that the "no evidence" standard is inadequate to protect against misapplications of the constitutional standard of reasonable doubt, and rejected it in favor of the rule that criminal convictions violate due process of law unless supported by sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560 (1979). Under this standard, an appellate court must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 318–19, 99 S.Ct. at 2789; *Alvarado*, 912 S.W.2d at 207. The Court of Criminal Appeals first applied the *Jackson* standard in *Griffin v. State*, 614 S.W.2d 155, 158–59 (Tex.Crim.App. 1981), but did not finally reject the "no evidence" standard until it decided *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989).

▮▮▮ In the past, this Court, like others, has applied the civil "no evidence" standard in reviewing challenges to the legal sufficiency of the evidence to establish that the juvenile committed an offense, and therefore, is a

delinquent child. *See e.g., M.M.R.*, 932 S.W.2d at 113; *In the Matter of C.F. v. State*, 897 S.W.2d 464, 472 (Tex.App.—El Paso 1995, no writ); *see also In the Matter of L.G.*, 728 S.W.2d 939, 943 (Tex.App.—Austin 1987, writ ref'd n.r.e.); *In the Matter of M.R.*, 846 S.W.2d 97, 99 (Tex.App.—Fort Worth 1992), *writ denied*, 858 S.W.2d 365 (Tex.1993). Under this approach, the appellate court is required to consider only the evidence and inferences tending to support the findings under attack and disregard all evidence and inferences to the contrary. *M.M.R.*, 932 S.W.2d at 113; *C.F.*, 897 S.W.2d at 472; *L.G.*, 728 S.W.2d at 943. If there is any evidence of probative force to support the jury's finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951)(per curiam); *M.M.R.*, 932 S.W.2d at 113; *C.F.*, 897 S.W.2d at 472. Lately, some appellate courts have rejected this approach and have instead applied the *Jackson v. Virginia* standard. *See R.X.F. v. State*, 921 S.W.2d 888, 899 (Tex.App.—Waco 1996, no writ); *In the Matter of P.L.W. v. State*, 851 S.W.2d 383, 387 (Tex.App.—San Antonio 1993, no writ). The Waco Court of Appeals reasoned that the civil "no evidence" standard, which was specifically rejected in *Jackson*, does not provide constitutionally sufficient review of the legal sufficiency of the evidence to support the finding that the juvenile committed an offense. *R.X.F.*, 921 S.W.2d at 899; *see P.L.W.*, 851 S.W.2d at 387. Like the San Antonio and Waco Courts of Appeals, we are persuaded that the *Jackson v. Virginia* standard must be applied in a juvenile case when reviewing challenges to the legal sufficiency of the evidence to establish the elements of the penal offense that forms the basis of the finding that the juvenile engaged in delinquent conduct or conduct indicating a need for supervision.[1]

---

1. Our application of the *Jackson v. Virginia* standard is limited to challenges to the legal sufficiency of the evidence to establish that a juvenile committed a certain offense. It does not apply to other legal sufficiency challenges that may be raised in a juvenile case. For example, a juvenile may challenge the legal sufficiency of the evidence supporting the juvenile court's transfer/certification decision. The juvenile court's decision is reviewed for an abuse of discretion and the proper standard of review for such a contention is the civil "no evidence" standard. *See In the Matter of S.A.M.*, 933 S.W.2d 744, 745 (Tex.App.—San Antonio 1996, no writ); *In the Matter of C.C.*, 930 S.W.2d 929, 932–33 (Tex. App.—Austin 1996, no writ); *In re J.J.*, 916 S.W.2d 532, 535 (Tex.App.—Dallas 1995, no writ); *In the Matter of K.B.H.*, 913 S.W.2d 684, 688 (Tex.App.—Texarkana 1995, no writ); *In the*

A person commits the offense of burglary of a building if, without the effective consent of the owner, he enters a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft. TEX.PENAL CODE ANN. § 30.02(a)(1)(Vernon 1994). The petition alleged that A.S. committed the felony offense of burglary of a building by entering the Midland Park Mall with the intent to commit theft. The jury found that A.S., either as an individual or as a party, engaged in delinquent conduct by committing the offense of burglary of a building, namely, Midland Park Mall.

■ A.S. first alleges that the evidence is insufficient to show that the Midland Park Mall is a building. A "building," as defined by the Texas Penal Code, is any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use. TEX.PENAL CODE ANN. § 30.01(2). A.S. is correct that no witness specifically testified that the Midland Park Mall is a "building" under the definition provided in section 30.01(2). However, witnesses referred throughout the trial to the mall as a building. Approximately eleven photographs of the burglarized premises, including several photographs offered by the co-defendant R.C.C. without objection by A.S., were admitted into evidence for the jury's consideration. These photographs depict an enclosed brick structure which has doors capable of being closed and locked. Other evidence showed that this structure contains retail department stores such as Beall's, Dillard's, and Sears, thereby providing evidence that the structure is used for the purpose of trade. We conclude that the evidence is legally sufficient to show that the Midland Park Mall is a building.

■ Appellant next alleges that the evidence is insufficient to establish that the building was not open to the public at the time he entered it. While no witness directly testified that the building was not open to the public at 3:30 a.m., other evidence circum-

*Matter of J.P.O.*, 904 S.W.2d 695, 698 (Tex.App.— Corpus Christi 1995, writ denied).

stantially established that the power room and the remainder of the mall were not open to the public. It is undisputed that A.S. entered the power room after Sanchez pried open a locked outer door with a crow bar. In addition to being locked, this door was secured by a burglar alarm. The power room is totally enclosed and provides no access to the remainder of the mall. Based upon this evidence, a rational jury could find that the building was not open to the public. From the evidence showing that the mall was dark and the doors were secured when Corporal White arrived, and that A.S. and Sanchez were attempting to beat a hole in the sheet rock in order to gain access to the remainder of the mall, a rational trier of fact could have inferred that the mall was closed. Thus, the evidence is sufficient to establish this element.

■ A.S. also challenges the legal sufficiency of the evidence to show that he had the requisite intent to commit theft.[2] Intent to commit theft may be inferred from the defendant's conduct and surrounding circumstances. *Lewis v. State*, 715 S.W.2d 655, 657 (Tex.Crim.App.1986); *Wilkerson v. State*, 927 S.W.2d 112, 115 (Tex.App.—Houston [1st Dist.] 1996, no pet.); *Davis v. State*, 783 S.W.2d 313, 318 (Tex.App.—Corpus Christi 1990, pet. ref'd—untimely filed). In reviewing the sufficiency of the evidence to establish intent, this Court may utilize a "presumption" that when a nonconsensual nighttime entry occurs, there is an intent to commit theft. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *see also Mauldin v. State*, 628 S.W.2d 793, 795 (Tex.Crim.App.1982); *Solis v. State*, 589 S.W.2d 444, 446 (Tex.Crim.App.1979); *Clark v. State*, 543 S.W.2d 125, 128 (Tex.Crim.App. 1976); *J.P.O.*, 904 S.W.2d at 706; *Cumpian v. State*, 812 S.W.2d 88, 90 (Tex.App.—San Antonio 1991, no pet.); *Davis*, 783 S.W.2d at 318. Although the cases refer to this as an appellate presumption, which suggests that this evidence standing alone establishes intent to commit theft, we believe that we

2. Because we find the evidence sufficient to establish A.S.'s intent to commit theft as a primary actor, we find it unnecessary to review his intent as a party.

must review all of the evidence in order to determine whether the requisite intent is established. Nevertheless, we have found no case holding that the requisite intent was shown based solely upon the nonconsensual nighttime entry. Instead, the courts consistently review all of the evidence in determining whether the intent to commit theft has been established. Some courts take issue with usage of the term "presumption" and hold that this is actually a permissive inference which merely establishes a non-conclusive circumstance supporting an intent to commit theft. *Wilkerson*, 927 S.W.2d at 115; *Thomas v. State*, 750 S.W.2d 320, 322–23 (Tex.App.—Dallas 1988, no pet.), *citing Aguilar*, 682 S.W.2d at 558 *and Hardesty v. State*, 656 S.W.2d 73, 77 (Tex.Crim.App. 1983). To the extent the term "permissive inference" suggests that the appellate court has the authority to disregard an inference which the jury could have rationally drawn from the evidence or to draw its own inferences from the evidence, it is inconsistent with the standard of review we must apply to legal sufficiency challenges. Regardless of whether we use the term "presumption" or "permissive inference," we will review all of the evidence in the light most favorable to the verdict, including the evidence showing the nonconsensual nighttime entry, in order to determine whether the State established A.S.'s intent to commit theft beyond a reasonable doubt.

◼ The evidence established that A.S., during the early morning hours and without the owner's consent, entered the power room of the Midland Park Mall after Sanchez pried open a locked door. After they gained entry, A.S. and Sanchez beat on the sheetrock wall in an effort to gain entry to other portions of the mall while R.C.C. acted as a lookout. After being discovered by Corporal White, Appellant fled the scene. In addition to the nonconsensual nighttime entry, A.S.'s intent to commit theft is a reasonable inference from his effort to gain access to other portions of the mall during non-business hours and his subsequent flight upon being discovered. *See Wilkerson*, 927 S.W.2d at 115 (intent to commit theft shown by defendant's nonconsensual nighttime entry into closed grocery store, defendant's possession of

gloves and a flashlight, his attempt to hide from the officers, and his inconsistent stories about having lawfully entered and then fallen asleep); *Davis*, 783 S.W.2d at 318 (intent to commit theft sufficiently shown where burglarious entry happened at night, defendant ran away when he was discovered but left flashlight on window sill); *Thomas*, 750 S.W.2d at 321–22 (defendant set off alarm at warehouse in middle of night and was found lying face-down inside, hiding); *Guerra v. State*, 657 S.W.2d 511, 513 (Tex.App.—Corpus Christi 1983, pet. ref'd) (defendant found in grocery store after hours). Consequently, the evidence is sufficient. Point of Error No. One is overruled.

◼ In his second point of error, A.S. challenges the factual sufficiency of the evidence to support these same elements. In reviewing this factual sufficiency challenge, we view all of the evidence but do not view it in the light most favorable to the verdict in determining whether the State met its burden of proof beyond a reasonable doubt. *R.X.F.*, 921 S.W.2d at 900; *G.M.P.*, 909 S.W.2d at 202; *see also Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust will we conclude that the State failed to carry its burden. *R.X.F.*, 921 S.W.2d at 900, *citing Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) and *Clewis*, 922 S.W.2d at 129. After reviewing all of the evidence, we cannot say that the jury's verdict is contrary to the overwhelming weight of the evidence. There is substantial evidence to establish that the Midland Park Mall is a building that was not open to the public at the time A.S. entered it. Further, A.S. offered no evidence that he entered the building for a lawful purpose and he failed to rebut the inference that he entered with the intent to commit theft. Because we find the evidence factually sufficient to establish these elements, Point of Error No. Two is overruled.

## PROGRESSIVE SANCTIONS

In his final point of error, A.S. urges that the trial court abused its discretion in com-

mitting him to the Texas Youth Commission rather than assigning him to sanction level three as provided for in sections 59.003 and 59.006 of the Texas Family Code because the evidence was insufficient to support the court's deviation from the progressive sanctions guidelines. Section 59.003 of the Family Code provides sanction level assignment guidelines for the juvenile probation department and the juvenile court. TEX.FAM.CODE ANN. § 59.003 (Vernon 1996). After a child's first commission of delinquent conduct, the juvenile court may, in a disposition hearing under Section 54.04, assign a child one of seven sanction levels according to the child's conduct. *See* TEX.FAM.CODE ANN. § 59.003(a); TEX.FAM.CODE ANN. §§ 59.004– 59.010. If the juvenile court deviates from the guidelines under this section, it must state in writing its reasons for the deviation and submit the statement to the juvenile board. TEX.FAM.CODE ANN. § 59.003(e).

The State contends that we may not address this point of error because Section 59.014 provides that the failure or inability of any person to provide a service listed under Sections 59.004–59.010 *or the failure of a court* or of any person *to make a sanction level assignment as provided in Section 59.002 or 59.003* may not be used by a child as a ground for appeal or for a postconviction writ of habeas corpus. TEX.FAM.CODE ANN. § 59.014. Given the plain language of Section 59.014 prohibiting a complaint on appeal regarding the court's failure to make a certain sanction level assignment, we must agree with the State that appeal of this issue is prohibited.

 However, we have liberally construed the argument raised under this point of error as challenging the factual sufficiency of the evidence to support the trial court's findings which permit A.S.'s commitment to TYC, a matter which we have authority to address. *See e.g., S.A.M.,* 933 S.W.2d at 746. In a juvenile case, the trial court possesses broad discretion to determine a suitable dis-

position of a child who has been adjudicated to have engaged in delinquent conduct. *In the Matter of J.R.,* 907 S.W.2d 107, 110 (Tex. App.—Austin 1995, no writ); *In the Matter of R.W.,* 694 S.W.2d 578, 580 (Tex.App.— Corpus Christi 1985, no writ). Absent an abuse of discretion, we will not disturb the juvenile court's findings. *C.C.,* 930 S.W.2d at 930; *J.J.,* 916 S.W.2d at 535; *J.P.O.,* 904 S.W.2d at 698. The juvenile court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge. *J.P.O.,* 904 S.W.2d at 699–700; *In the Matter of G.F.O.,* 874 S.W.2d 729, 731–32 (Tex.App.—Houston [1st Dist.] 1994, no writ).[3] Here, A.S. challenges only the factual sufficiency of the evidence to support the findings. In reviewing a factual insufficiency point, we consider and weigh all of the evidence in the case, and, if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the judgment and remand for a new trial. *J.J.,* 916 S.W.2d at 535–36; *J.P.O.,* 904 S.W.2d at 700; *G.F.O.,* 874 S.W.2d at 731–32.

The juvenile court's exercise of discretion in making an appropriate disposition is guided by the requirements of Section 54.04 of the Family Code. Section 54.04(c) provides that the trial court may not make a disposition placing a juvenile outside of his home unless the court finds that the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. TEX.FAM.CODE ANN. § 54.04(c). Further, in order to commit a child to the Texas Youth Commission, the court must additionally find and state in its disposition order that placement outside of the child's home is in the child's best interest and that reasonable efforts were made to prevent or eliminate the need for the child's removal

---

**3.** We disagree with the Austin Court of Appeals decision to apply the *Jackson v. Virginia* standard of review to the sufficiency of the evidence to support the findings underlying a disposition order. *In the Matter of M.S.,* 940 S.W.2d 789 (Tex.App.—Austin 1997)(not yet reported).

Since the juvenile court's findings supporting the disposition order are not required to be supported by proof beyond a reasonable doubt, application of the *Jackson v. Virginia* standard is inappropriate.

from the home. TEX.FAM.CODE ANN. § 54.04(I).

A.S. was sixteen years old at the time of the disposition hearing. He was born in Mexico and is a legal resident in the United States. A.S. did not testify but he offered the testimony of several witnesses, including his mother. A.S.'s mother, M.M., was born in Mexico and, like A.S., is a legal resident. She has applied for citizenship. M.M. testified that the family had moved back to Midland in August of 1995 after living in El Paso for a little less than four years. A.S.'s father had lived with the family in Midland before they moved to El Paso but he was deported to Mexico after committing a criminal offense. The family chose to have no further relationship with A.S.'s father because he had been physically abusive when he lived with them. M.M. is employed and has no criminal history. A.S.'s girlfriend, who is pregnant, lives with M.M., A.S., and A.S.'s younger sister. M.M. said that A.S. did not have any problems with law enforcement while they lived in El Paso. However, on one occasion, some gang members shot at A.S. as he left school. That is one of the reasons they moved back to Midland. According to M.M., A.S. does not attend school because he is working to help support the family. She also related that A.S. willingly performs the chores she gives him. M.M. set curfews for A.S. which he generally followed and she believed that she had control over him. She explained that she would continue to set curfews for A.S. if he were given probation and she would require him to obey her rules.

Nasser Hawashem testified that he had employed A.S. as a dishwasher and a cook at his restaurant for two months prior to trial. Hawashem characterized A.S. as dependable and a hard worker. Hawashem told the court that A.S. could continue to work with him if placed on probation.

Ann Sepulveda had known A.S. and his family for several years. She described A.S.'s mother as strict and capable of supervising A.S. if he were placed on probation in the home. Sepulveda testified that A.S. and his girlfriend had plans to marry and A.S. had been working to support the family.

Josue Arrambide, a juvenile probation officer, prepared a written social history and testified regarding his findings after conducting an investigation into A.S.'s circumstances. The probation departments in Midland and El Paso had not received any referrals on A.S. A.S. related to Arrambide that he had no pending charges other than a traffic ticket and a failure to appear. Based upon his investigation of the family circumstances, Arrambide concluded that M.M. had adequate control over the children and in his opinion, A.S. would be provided with the quality and level of care that is required to meet the terms of juvenile probation. Consequently, Arrambide recommended a disposition of probation in the home.

At the disposition hearing, the State offered only the evidence adduced during the adjudication phase and the testimony of Darrin Clemens, a gang intelligence officer with the Midland Police Department. Clemens testified that A.S. had been seen in December of 1995 by gang intelligence officers "throwing" gang signs and wearing gang colors. When questioned further, however, Clemens admitted that A.S. had thrown signs at the request of some gang intelligence officers. Clemens explained that officers would contact a youth suspected of being a gang member and ask him to throw up some gang signs and they would photograph him. The trial court refused to admit three photographs of A.S. that were made in December of 1995 as a result of this procedure. According to Clemens, A.S. admitted during this same encounter with officers that he was a member of the East Side Crips in El Paso. He also related that A.S. has a tattoo on his hand with the letters "ESC" which indicated his involvement with the East Side Crips in El Paso. Clemens stated that A.S. was documented as a gang member from the time he lived in El Paso and he was known to associate with gang members in Midland, but he admitted that A.S. had not been documented as a gang member in Midland. Clemens testified, however, that the only known gang member A.S. had associated with in Midland was Marcos Sanchez.

 The record contains no evidence to establish that reasonable efforts had been made to prevent or eliminate the need for

A.S.'s removal from the home. Further, the juvenile court's finding that A.S.'s home cannot provide him with the support and supervision needed to meet the conditions of probation is contrary to the great weight and preponderance of the evidence. Other than A.S.'s commission of this state jail felony offense and the violation of his mother's curfew on this occasion, there is no evidence to establish that M.M. cannot provide the quality of care and level of support and supervision that A.S. needs to meet the conditions of probation. We do not minimize the tragic outcome of this incident in which a police officer was severely wounded and another individual killed, but the jury found that A.S. did not commit the offenses of aggravated assault or felony murder. While his offense is certainly serious, there is no evidence to establish that A.S. has committed any other offenses and he has never been referred by the probation offices in either Midland or El Paso. Admittedly, M.M. largely did not acknowledge A.S.'s past involvement with a gang in El Paso, but there is no evidence that he is currently associated with a gang in Midland. The social history reflects that A.S. admitted his involvement with the East Side Crips in El Paso but he had reportedly severed his ties to that gang and denied any gang involvement in Midland. Further, M.M. had moved the family from El Paso to protect A.S. and escape any bad influence which gang activity might have had on him. The evidence showed that A.S. was acting responsibly within the family structure, particularly since his girlfriend had become pregnant, and he generally obeyed his mother's instructions. On the record before us, the evidence does not support the finding that placement outside of the home is in A.S.'s best interest. Accordingly, the trial court abused its discretion in committing A.S. to TYC. Point of Error No. Three is sustained. Because we have overruled Points of Error Nos. One and Two, the order of adjudication is affirmed; having found error in the disposition order, it is reversed and this cause is remanded for a new disposition hearing. TEX.FAM.CODE ANN. § 56.01(I).