Criminal Case Template




COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



IN THE MATTER OF J.H.C.,


 Appellant.



§


§


§


§


§

No. 08-02-00244-CV


Appeal from the


65th District Court


of El Paso County, Texas


(TC# 9900073)


MEMORANDUM OPINION



 J.H.C. appeals a judgment committing him to the Texas Youth Commission. He
argues that the trial court's denial of a continuance was an abuse of discretion, resulted in
an improper disposition, and deprived him of due process. We affirm.

Factual and Procedural Background

 J.H.C. signed a written waiver of jury trial, stipulation of evidence, and admission
to the offense of evading detention. The trial court therefore adjudicated him delinquent.

 At the disposition hearing, the only witness was Linda Yvonne Castro, J.H.C.'s
probation officer. Her predisposition report was admitted into evidence, along with the
reports of a psychiatrist and a psychologist. The psychiatrist and the psychologist
recommended that J.H.C. be placed in a highly structured, secure facility.

 Castro testified that J.H.C. had three prior adjudications of delinquency for
committing family violence against his mother. J.H.C.'s mother was the only family
member he had in El Paso. Castro testified that she believed his mother contributed to
J.H.C.'s delinquency because she had difficulty controlling him, and much of his anger
was directed at her. J.H.C.'s mother had a history of alcohol abuse, but did not abuse
alcohol at the time of the hearing.

 J.H.C. began using drugs when he was twelve years old. His drug usage included
inhalants, marijuana, cocaine, rohypnol, heroin, and alcohol. J.H.C. was also a gang
member.

 In addition to his substance abuse problem, J.H.C. had been diagnosed with
numerous psychological and medical disorders. Although various medications had been
prescribed for these disorders, J.H.C. had a history of refusing to take the medication.

 J.H.C. was under the care of a neurologist, Dr. Fierro-Stevens. Castro provided
J.H.C.'s counsel with documentation from Dr. Fierro-Stevens, indicating that J.H.C. had
an abnormal EEG without seizures, for which J.H.C. was taking Depakote. Another
doctor, Dr. Rathbun, had previously diagnosed J.H.C. with a "severe problem with
subclinical epilepsy attacks." J.H.C. was receiving Social Security benefits because of
the epilepsy. After the State objected to the cross-examination of Castro about the
epilepsy, J.H.C.'s counsel explained that the epilepsy was relevant because it could lead
to abnormal emotional responses and might have contributed to J.H.C.'s aggressive
behavior. The State argued that if the epilepsy was relevant, J.H.C.'s counsel should have
subpoenaed Dr. Fierro-Stevens to testify on the matter. J.H.C.'s counsel responded,
"Very well. Then, I would ask for a continuance to go ahead and subpoena Doctor Fierro-Stevens for this case." The court denied the continuance.

 Castro detailed the efforts that had been made to keep J.H.C. in his home and out
of TYC. When he was first adjudicated delinquent, J.H.C. was put on electronic
monitoring probation and sent home. After he again committed family violence against
his mother, he was unsuccessfully placed in a foster home. After that, he was placed in
the Campbell Griffin Center and then the Rio Grande Residential Treatment Center. He
was "assaultive" toward three staff members at Campbell Griffin, and at Rio Grande he
continued to have "aggressive incidents" and absconded from the facility. J.H.C. was
eligible for the Challenge Boot Camp, but Castro believed that he would not be successful
in that program because of its aggressive approach to treatment and J.H.C.'s history of
aggressive behavior. Castro stated that there was no other facility in El Paso that would
offer J.H.C. the services he needs in a locked-down facility. Castro indicated that TYC
could provide treatment for all of J.H.C.'s medical, mental, and substance abuse
problems. Accordingly, she recommended that J.H.C. be committed to TYC.


Abuse of Discretion by Denying Continuance

 In his first issue, J.H.C. argues that the trial court abused its discretion by denying
his motion for a continuance to procure Dr. Fierro-Stevens's testimony. We will evaluate
this argument under the applicable Texas Rules of Civil Procedure and civil case law. 
See Tex. Fam. Code Ann. § 51.17 (Vernon 2002) (stating that civil rules govern juvenile
delinquency proceedings, except for discovery and evidentiary rules and rules that
conflict with the Juvenile Justice Code); In re D.B., 594 S.W.2d 207, 212 (Tex. Civ.
App.--Corpus Christi 1980, no writ) (applying civil case law in reviewing the denial of a
juvenile's continuance motion).

 Continuances should be granted only "for sufficient cause supported by affidavit." 
Tex. R. Civ. P. 251. When a party seeks a continuance for want of testimony, the motion
must be supported by an affidavit showing that the testimony is material and that the party
used due diligence to procure the testimony. Tex. R. Civ. P. 252.

 A court's decision to deny a continuance motion will not be reversed unless the
record shows a clear abuse of discretion. Walton v. Canon, Short, & Gaston, 23 S.W.3d
143, 150 (Tex. App.--El Paso 2000, no pet.). If the motion does not comply with Rules
251 and 252, we presume the court did not abuse its discretion in denying the motion. 
Grace v. Duke, 54 S.W.3d 338, 343 (Tex. App.--Austin 2001, pet. denied); Rosedale
Partners Ltd. v. Resolution Trust Corp., 882 S.W.2d 622, 630 (Tex. App.--Corpus Christi
1994, writ denied).

 J.H.C.'s oral motion for continuance did not comply with Rules 251 and 252. 
Therefore, the court did not abuse its discretion in denying the motion.

Abuse of Discretion by Rendering Judgment Without Sufficient Information

 In his second issue, J.H.C. argues that the trial court abused its discretion by
rendering a judgment without considering all the evidence that was essential to a proper
disposition. The trial court has broad discretion to determine a suitable disposition for a
juvenile who has been adjudicated delinquent. In re A.S., 954 S.W.2d 855, 861 (Tex.
App.--El Paso 1997, no pet.). To determine whether the court abused its discretion, we
must answer two questions. First, did the trial court have sufficient information upon
which to exercise its discretion? Second, did the trial court err in the application of its
discretion? In re M.A.C., 999 S.W.2d 442, 446 (Tex. App.--El Paso 1999, no pet.).

 J.H.C. argues that the court did not have sufficient information upon which to
exercise its discretion because, as a result of the denial of the continuance, the court did
not receive testimony from Dr. Fierro-Stevens. He asserts that the doctor's testimony
could have informed the court whether his epilepsy contributed to his aggressive behavior
and whether it would be better to subject him to medical treatment instead of
incarceration.

 It is not clear what caused J.H.C.'s behavior. It could have been caused by his
environment, his drug abuse, a mental problem, epilepsy, or a combination of these
factors and others. But regardless of what caused the conduct, the trial court could have
easily found from the evidence at the disposition hearing that J.H.C. had engaged in
repeated aggressive and self-destructive behavior. The court could have also found that
many attempts had been made to rehabilitate J.H.C. and to subject him to medical
treatment, yet those attempts had all failed. We therefore conclude that the trial court had
sufficient information upon which to exercise its discretion. (1)

Deprivation of Due Process by Denying Continuance

 In his third issue, J.H.C. argues that the denial of the continuance deprived him of
due process. In evaluating this argument, we will apply criminal law. See In re R.S.C.,
940 S.W.2d 750, 751-52 (Tex. App.--El Paso 1997, no writ) (stating that delinquency
proceedings are quasi-criminal in nature and that juveniles are entitled to many of the
constitutional protections that are afforded to adult criminal defendants).

 J.H.C. relies on In re R.D.B., 20 S.W.3d 255 (Tex. App.--Texarkana 2000, no
pet.). In that case, the court held that trial counsel was ineffective in failing to request the
assistance of a court-appointed mental health professional. Id. at 261. J.H.C. argues that
if counsel must request the assistance of a mental health expert to fulfill the professional
responsibility to a client, then the trial court has a duty to grant a continuance to procure
the professional's assistance. Based on the record before us, and for the reasons
explained below, we do not agree with the contention that the court had a duty to grant
the untimely motion for continuance.

 When the circumstances surrounding the denial of an oral motion for continuance
amount to a denial of the rudiments of due process, the denial is subject to appellate
review. Petrick v. State, 832 S.W.2d 767, 770 (Tex. App.--Houston [1st Dist.] 1992, pet.
ref'd). To determine whether the denial of a continuance to procure a defense witness
amounts to a deprivation of due process, we examine the facts preceding the motion for
continuance. Id. We consider the following factors: (1) the diligence of the defense in
interviewing the witness and procuring the testimony; (2) the probability of procuring the
testimony within a reasonable time; (3) the specificity with which the defense can
describe what the expected testimony will be; (4) the degree to which the testimony is
expected to be favorable to the accused; and (5) the unique or cumulative nature of the
testimony. Id. at 771.

 Here the predisposition report, which mentioned Dr. Fierro-Stevens's treatment of
J.H.C., was prepared on May 22, 2002, and the disposition hearing was held on May 24,
2002. Appellate counsel argues that it would not have been practical to interview Dr.
Fierro-Stevens and prepare for the hearing in this two-day period. That may be true, but
the record indicates that trial counsel did not make any effort to procure his testimony
before asking for the continuance in the middle of the hearing. Appellate counsel
concedes that Dr. Fierro-Stevens could have been subpoenaed before the hearing. Thus,
the record does not reflect that trial counsel exercised diligence in procuring Dr. Fierro-Stevens's testimony.

 The record offers very little information about the next three factors. There is no
information regarding how long it would have taken to procure Dr. Fierro-Stevens's
testimony. The doctor presumably would have been able to shed additional light on
J.H.C.'s mental condition, but it is not at all clear that his testimony would have been
favorable to J.H.C. As for the fifth factor, it appears that Dr. Fierro-Stevens's testimony
would have been somewhat cumulative because evidence that J.H.C. had been treated for
epilepsy, seizures, and aggressive behavior had already been admitted into evidence.

 After applying the Petrick factors to the record in this case, we conclude the trial
court did not abuse its discretion in denying the continuance, and J.H.C. was not deprived
of due process.

Conclusion

 For the reasons stated herein, we overrule all J.H.C.'s issues and affirm the
judgment of commitment.


 SUSAN LARSEN, Justice

April 24, 2003


Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.
1. A form attached to the order of commitment sets forth the reasonable efforts that were
made to prevent the need to remove J.H.C. from his home. The form has blanks for listing the
counseling or psychological services provided to J.H.C. In these blanks, the court wrote that
there were "[e]valuations" by several doctors, including Drs. Rathbun and Fierro-Stevens. 
J.H.C. argues that no such "evaluations" were offered for the court to consider and that the
disposition hearing was therefore unreasonable. This contention is without merit. It is
undisputed that J.H.C. was treated by both doctors. The form does not state that any evaluations
were offered into evidence.