Opinion filed March 22, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed March 22, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00397-CV 

                                                     __________

 

                                        IN
THE MATTER OF T.E.G.

 



 

On Appeal from the County Court at Law

 

Midland
 County, Texas

 

Trial Court Cause No. 5325

 



 

O
P I N I O N

 

This is an appeal from a judgment adjudicating a
juvenile of delinquent conduct.  Tex. Fam. Code Ann. ' 51.03 (Vernon Supp. 2006) defines
delinquent conduct as Aconduct,
other than a traffic offense, that violates a penal law of this state or of the
United States punishable by imprisonment or by confinement in jail.@ 
The jury found that T.E.G. engaged in delinquent conduct by causing
bodily injury to Joe Limon on September 21, 2004, and by causing injury to a
child, Bay Wilson, on September 1, 2005. 
Tex. Pen. Code Ann. ' 22.01 (Vernon Supp. 2006).  In a single point of error, appellant asserts
that the State=s
evidence of its reasonable effort to prevent removal of appellant from his home
was legally and factually insufficient and did not support the court=s decision to commit appellant to the
Texas Youth Commission (TYC).  Tex. Fam. Code Ann. ' 54.04(i)(1)(B) (Vernon Supp. 2006).  We affirm.








Standard of Review

The adjudication of a juvenile as a delinquent is
based on the criminal burden of proof: beyond a reasonable doubt.  Tex.
Fam. Code Ann. '
54.03(f) (Vernon
Supp. 2006).  Therefore, we apply the
same standards of review to challenges of the sufficiency of the evidence in
the adjudication of a juvenile as we do in criminal cases.  In re L.F.L.T.B., 137 S.W.3d 856, 858
(Tex. App.CEastland 2004, no pet.).  The challenge in this appeal, however, is to
the sufficiency of the evidence in the disposition phase of the juvenile
proceeding.

In reviewing a disposition order in a juvenile
case, the majority of courts have declined to apply the criminal legal and
factual sufficiency standards of review. 
In re C.G., 162 S.W.3d 448, 452 (Tex. App.CDallas
2005, no pet.) (applying the civil standards); In re H.R.C., 153 S.W.3d
266, 269 (Tex. App.CEl Paso
2004, no pet.); In re J.D.P., 85 S.W.3d 420, 426 (Tex. App.CFort Worth 2002, no pet.); In re
T.K.E., 5 S.W.3d 782, 785 (Tex. App.CSan
Antonio 1999, no pet.); In re K.L.C., 972 S.W.2d 203, 206 (Tex. App.CBeaumont 1998, no pet.); but see In
re C.C., 13 S.W.3d 854, 858 (Tex. App.CAustin
2000, no pet.) (applying the criminal standards of review to a
disposition).  We will follow the civil
standards in reviewing the legal and factual sufficiency of the evidence
supporting a juvenile court=s
disposition decision.  In Section
54.03(f), the legislature mandated that findings supporting an adjudication of
delinquency must be beyond a reasonable doubt. 
In Section 54.04, the legislature did not require the findings for
disposition of a juvenile to be supported by proof beyond a reasonable
doubt.  See Tex. Fam. Code Ann. ' 54.04 (Vernon Supp. 2006).








A juvenile court has broad discretion in
determining a suitable disposition for a child who has been adjudicated as having
engaged in delinquent conduct.  In re
C.G., 162 S.W.3d at 452; In re T.A.F., 977 S.W.2d 386, 387 (Tex.
App.CSan
Antonio 1998, no pet.); In re A.S., 954 S.W.2d 855, 861 (Tex. App.CEl Paso 1997, no pet.).  Absent an abuse of discretion, the reviewing
court will not disturb the juvenile court=s
determination.  In re C.G., 162
S.W.3d at 452; In re T.A.F., 977 S.W.2d at 387.  The test for abuse of discretion is whether
the court acted arbitrarily or unreasonably B
that is, without reference to guiding rules and principles.  In re T.A.F., 977 S.W.2d at 387; In
the Interest of S.B.C., 952 S.W.2d 15, 17 (Tex. App.CSan
Antonio 1997, no writ).  Under an abuse
of discretion standard, legal and factual sufficiency are relevant factors in
assessing whether the trial court abused its discretion.  In re C.G., 162 S.W.3d at 452.

The guiding principles for committing a child to
TYC are provided in the Texas Family Code. 
When a court places a child on probation outside the child=s home or commits a child to TYC, the
court must include in its order its determination that it is in the child=s best interests to be placed outside
the child=s home;
reasonable efforts were made to prevent or eliminate the need for the child=s removal from the home and to make it
possible for the child to return to the child=s
home; and the child, in the child=s
home, cannot be provided the quality of care and level of support and
supervision that the child needs to meet the conditions of probation.  Section 54.04(i).  The trial court=s
order in this case included these three findings.  Appellant argues that the State presented
legally and factually insufficient evidence to demonstrate that the state made
reasonable efforts to prevent or eliminate the need for appellant=s removal from his home.

The supreme court in City of Keller v. Wilson,
168 S.W.3d 802 (Tex.
2005), reviewed how an appellate court should analyze a legal sufficiency
challenge to a jury verdict.  The supreme
court stated that A[t]he
final test for legal sufficiency must always be whether the evidence at trial
would enable reasonable and fair-minded people to reach the verdict under
review.@ Id. at
827.  Instead of the jury, the juvenile
court was the trier of fact at the disposition hearing in this case.  In our review for abuse of discretion, we
apply the City of Keller requirements in our legal sufficiency analysis
of the juvenile court=s
fact findings:  we consider the evidence
in the light most favorable to the findings and indulge every reasonable
inference that supports them; we credit favorable evidence if a reasonable
trier of fact could and disregard contrary evidence unless a reasonable trier
of fact could not; we recognize that the trier of fact is the sole judge of the
witnesses=
credibility and the weight to be given their testimony; and we cannot
substitute our judgment for that of the trier of fact so long as the evidence
falls within the zone of reasonable disagreement.  City of Keller, 168 S.W.3d at 821-28.  Also, in reviewing for abuse of discretion
with respect to the factual sufficiency of the evidence, we consider and weigh
all the evidence and set aside a juvenile court=s
determination only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re J.D.P., 85 S.W.3d
at 426; In re T.K.E., 5 S.W.3d at 785.








Background and the Disposition Hearing
Testimony

The jury found that T.E.G. engaged in delinquent
conduct by causing bodily injury to Joe Limon on September 21, 2004, and by
causing injury to a child, Bay Wilson, on September 1, 2005.  T.E.G., a junior high school student, and
Limon exchanged words just before class was dismissed.  Limon admonished T.E.G. to be quiet in order
to prevent them from being held in class after the bell. T.E.G. struck Limon=s left cheek with his fist.  Limon experienced pain, a swollen cheek, and
a cracked tooth.  Almost a year later,
T.E.G. got off a school bus, approached a student, and accused that student of
making a racial slur.  T.E.G. pushed the
student down and then was confronted by the student=s
nine-year-old brother, Wilson, who attempted to intervene on behalf of his
brother.  T.E.G. hit the younger boy with
his fist so hard that Wilson=s eye socket and concussion required
hospital treatment and observation.

T.E.G.=s
disposition hearing was approximately two weeks after he had been adjudicated
of having engaged in delinquent conduct and having caused bodily injury.  Lisa Trevino, a Midland
County juvenile probation officer,
introduced T.E.G.=s social
history that was prepared after the Limon incident and a social history
supplement that was prepared after the Wilson
incident.  Trevino admitted that, after
the Limon incident, the Juvenile Probation Department had recommended probation
in T.E.G.=s home
for one year but that the department, after the Wilson incident, recommended commitment to
TYC.  Trevino introduced a school report
showing that T.E.G. was failing all of his classes except English.  The report also showed that T.E.G. had 35
disciplinary referrals at his school during the two-and-one-half-month period
prior to his jury trial.  In addition to
the assault against Wilson,
one of the disciplinary referrals involved T.E.G. being suspended for fighting
with another student on October 19, 2005. 
Most of the referrals involved T.E.G. being disruptive and having a
problem with authority.  T.E.G. admitted
to school authorities that he was under the influence of marihuana on November
3, 2005, and at that point, the authorities recommended that he be expelled.








Trevino testified that she met with T.E.G.=s mother who Aadmitted
that [T.E.G.] tends to get angry and react before thinking about what he=s going to do or not do.@ 
Trevino stated that the mother believed that T.E.G. was not open enough
or willing for his mother to help him with problems at school or within the
community.  According to Trevino, the
record showed an increase in T.E.G.=s
misbehavior at school.

When asked if the department explored alternatives
to recommending a commitment to TYC, Trevino gave an affirmative reply but
stated a number of reasons why the department rejected those alternatives.  She said that the department had referred
youngsters for anger management counseling through the Top Rank Youth Program
and also to MHMR for services relating to an ADHD or bipolar diagnosis.  Trevino stated that the severity of T.E.G.=s discipline problems indicated that he
would not respond well to the counseling through the Top Rank Youth Program and
that he could also pose a danger to the community.  According to Trevino, T.E.G. would not get
sufficient counseling under the alternatives but would receive more services at
TYC.  Trevino expressed her belief that
the commitment to TYC would be in T.E.G.=s
best interest.

Counsel for T.E.G. points out that Trevino spent
less than thirty minutes with T.E.G. before completing her portion of the
social study.  During cross-examination,
Trevino stated that, when she served the summons on T.E.G. at school, she spent
twenty minutes with him discussing an incident that he had been involved in at
school earlier during the day.  T.E.G.
admitted to her that he had been under the influence of marihuana.  They also discussed who T.E.G. was
associating with, his drug use, and other information she needed for the
supplement to his social history.  The
supplement reflects that T.E.G. admitted that he smoked marihuana a couple of
times a month.  Trevino spent another ten
minutes with T.E.G. just after the jury verdict of delinquency was returned.








Trevino also testified that she met with T.E.G.=s mother on two occasions to discuss
the family=s history
and other matters that Trevino needed for the supplemental report.  Trevino explained that she presented the
information required by the staffing committee but did not participate in their
decision.  The staffing committee was
composed of all the supervisors within the department.  Trevino testified that the staffing committee
of the department made the recommendation for commitment to TYC based on the
two assaults and the numerous disciplinary problems at school.  After testifying about the various options
for a child B
probation, intensive supervision probation, secured detention facilities, a
boys= ranch,
and TYC B Trevino
stated that the department believed that TYC was the proper choice because the
minimum stay there was nine months, a length of time adequate for TYC to
provide T.E.G. with the services he required. 
Trevino described the services at TYC:

They -- they operate on what=s called four cornerstones of
resocialization.  That centers around, of
course, education, physical training, military movement drills, correctional
therapy sessions, leadership and social skills training, work activities, facility
maintenance, of course, any type of counseling for any special needs that he
may have, whether it be for his ADHD or anger management or any other needs
that he may have.

 

Trevino stated that T.E.G. needed services for his ADHD and
intense substance abuse counseling in view of his use of drugs.  She admitted that the department had programs
to address those problems if he were put on probation and left in his
home.  Trevino stated that the staffing
committee looks at all the options and then decides what is best for each
child.

T.E.G.=s
mother testified that her husband works and that she has a part-time student
job while she is attending classes on computers at Midland College.  She testified that T.E.G. had been a client
of MHMR when he was six or seven (he was fifteen at the time of trial) to help
him control his anger and to treat his ADHD. 
Several doctors treated T.E.G. until early in the year 2004.  The medicine that he took calmed him down but
did not help him focus on his school tasks. 
The mother conceded that T.E.G. continues to have behavioral problems
and that, if those problems are not addressed, he could become involved with
the criminal justice system when he becomes an adult. T.E.G.=s mother expressed her fears that TYC
was Ajust
prison for kids@ and that
he would not be helped.  She expressed
her preference that T.E.G. be left at home and be put on intensive
probation.  She assured the court that
the family would make certain that T.E.G. made all required meetings.

The Trial Court=s
Ruling








Prior to making its ruling, the trial court stated
that T.E.G.=s mother,
the school district, and the Juvenile Probation Department had made reasonable
efforts to prevent T.E.G. from being removed from his home.  The court complimented the mother on her
efforts to help T.E.G.  However, the
court believed that TYC would be the most effective way to help T.E.G. at this
point in time.  In addition to the
evidence at the disposition hearing, the court had heard the evidence at the
adjudication hearing concerning the severity of the assaults.  We find that the evidence was legally and
factually sufficient to support the trial court=s
finding that reasonable efforts were made to prevent or eliminate the need for
the child=s removal
from the home.  The trial court did not
abuse its discretion in committing T.E.G. to TYC.  Appellant=s
point of error is overruled.

This Court=s
Ruling

The judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

March 22, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.